**MADISON RECYCLING ASSOCIATES,** David A. Beldon, Robert T. Boyd, Douglas C. Brandon, Stewart Pierce Brown, Lloyd E. Busch, David J. D'Antoni, John H. Delaney, Jr., Daniel C. Greer, Gerald O. Henderson, Charles D. Hoertz, Estate of Joseph Kessel, Thomas P. Korehle, Josiah O. Low, III, Robert J. Ripston, Howard S. Siever, Lavonne F. Siever, James W.

Simpson, Jr., R. Barry Uber, Lillian D. Williams, Partners other than the Tax Matters Partner, Petitioners–Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

Docket No. 01–4141.

United States Court of Appeals, Second Circuit.

Argued: June 20, 2002.

Decided: July 9, 2002.

---

CALABRESI, Circuit Judge.

Petitioners–Appellants, who are limited partners of Madison Recycling Associates ("Madison"), a limited partnership organized under the laws of the State of New York, appeal from judgments of the Tax Court sustaining adjustments sought by the Commissioner of the Internal Revenue Service (the "Commissioner" or the "IRS") to Madison's 1982 partnership return and holding them liable for taxes. The principal issue on appeal is whether the Notice of Final Partnership Administrative Adjustment (the "FPAA") was issued by the IRS within the period of limitations for assessing any income tax, for Madison's 1982 taxable year, attributable to any partnership item (or affected item).

Gillard B. Johnson, III, Bowling & Johnson, P.S.C. (Patrick Nash, Lexington, KY, on the brief), for Petitioners–Appellants.

Annette M. Wietecha (Bruce R. Ellisen, on the brief), for Eileen J. O'Connor, Assistant Attorney General, Tax Division, Department of Justice, Washington, D.C., for Respondent–Appellee.

Before: CALABRESI, SACK, and B.D. PARKER, JR., Circuit Judges.

## BACKGROUND

Madison is a partnership subject to the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, § 402(a), 96 Stat. 324, 26 U.S.C. § 6221 et seq.[1] Accordingly, the treatment of Madison's partnership items is determined at the partnership level. The parties are in agreement with respect to the adjustments made in the FPAA,[2] but disagree as to whether the FPAA was timely.

1. Until the enactment of TEFRA, administrative and judicial proceedings related to partnership income were conducted at the level of the individual partner. If the IRS took issue with the partnership's books or returns, it addressed the matter with each partner individually. *See, e.g., Chimblo v. Comm'r,* 177 F.3d 119, 121 (2d Cir.1999). Under TEFRA, a single proceeding determines how partnership items will be reported on all of the partners' individual returns. The partners, moreover, are required to treat partnership items consistently with the items' treatment on the partnership return. Individual taxpayers still pay the relevant taxes, but the determination as to the amount of tax attributable to partnership items is made at the partnership level. *Monti v. United States,* 223 F.3d 76, 82 (2d Cir.2000).

2. The adjustments in the instant case (which is part of the Plastics Recycling Cases, involving the leasing of plastics recycling equipment) arise from transactions similar to those addressed in *Provizer v. Comm'r,* 63 T.C.M. (CCH) 2531, 1992 WL 56983 (1992), *aff'd,* 996 F.2d 1216 (6th Cir.1993) (unpublished decision). In *Provizer,* the transactions were found to be shams lacking economic substance. The substance and merits of the transactions, however, are not at issue in the case before us.

## A. The Partnership Agreement

Madison's Agreement of Limited Partnership, executed on September 20, 1982, named Richard Roberts ("Roberts") as the general partner and tax matters partner (the "TMP").[3] Roberts was Madison's sole general partner and its TMP in 1982 and at all other relevant times. Under the partnership agreement, Roberts, as general partner, had exclusive management power over the partnership. The agreement provides, in relevant part, that the general partner has the power and authority on behalf of the partnership:

(a) to execute, acknowledge and deliver any and all instruments necessary, convenient or advisable to effectuate any and all of the foregoing, including, without limitation, equipment purchase agreements, leases, licenses, security agreements, management consulting agreements and other agreements between the Partnership and one or more third parties;

. . . .

(e) to employ on behalf of the Partnership agents and independent contractors[,] including, without limitation, employees, accountants, lawyers and appraisers[,] and to obtain such other assistance and services and to pay such remuneration therefor as the General Partner deems proper;

. . . .

(j) to file all necessary income and other tax returns and reports required to be filed by the Partnership;

. . .; [and]

(n) to perform any other acts specifically authorized to the General Partner by any other provision of this Partnership Agreement. In addition, in furtherance of the foregoing, the General Partner shall possess all of the power and authority of a general partner in a partnership without limited partners as is provided under the laws of the State of New York. . . .

Under the partnership agreement, the limited partners have no right or authority to bind or act for the partnership. Rather, upon admission to the partnership, each limited partner granted an irrevocable power of attorney to the general partner, giving Roberts the authority to make, execute, and file, *inter alia*, "[a]ny and all . . . documents as may be deemed necessary or desirable by the General Partner to carry out fully the provisions of [the partnership agreement]."

## B. Madison's 1982 Partnership Tax Return and Related Tax Proceedings

Madison filed its 1982 Form 1065, U.S. Partnership Return of Income, with the Brookhaven Service Center in Holtsville, New York, on March 14, 1983. The return was prepared by H.W. Freedman & Co., Madison's accountants, and signed by Roberts as Madison's TMP and general partner. At that time, Harris W. Freedman ("Freedman") and Shaye Jacobson ("Jacobson") were partners in H.W. Freedman & Co.

In 1983, the IRS determined that Roberts had violated I.R.C. § 6700 by pro-

---

**3.** The TMP is "the partner designated to act as a liaison between the partnership and the Internal Revenue Service in administrative proceedings, and as a representative of the partnership in judicial proceedings." *Addington v. Comm'r,* 205 F.3d 54, 60 (2d Cir.2000); *see* I.R.C. § 6224(c)(3)(A), 26 U.S.C. § 6224(c)(3)(A) (References to the Internal Revenue Code, 26 U.S.C. § 401 *et seq.,* are designated "I.R.C."). The TMP is the general partner designated by the partnership or, if no general partner is so designated, the general partner having the largest profit stake in the partnership at the close of the taxable year. *See* I.R.C. § 6231(a)(7).

moting and selling limited partnership interests in various plastics recycling partnerships, including Madison. On August 8, 1983, the United States, pursuant to I.R.C. § 7408, filed a civil complaint in the United States District Court for the District of Massachusetts, seeking an injunction against Roberts and other promoters of the partnerships. That same day, in accordance with a consent agreement signed by Roberts on August 4, 1983, the court issued a permanent injunction against Roberts and other promoters to prevent them from further organizing, promoting, or selling abusive tax shelters. Roberts moved to Paris, France, in 1984, and apparently has continued to reside there ever since. In January 1985, pursuant to I.R.C. § 6700, the IRS assessed $205,000 in civil penalties against Roberts for his role in the promotion of the plastics recycling partnerships.

The IRS began its examination of Madison's 1982 tax filings in 1984. On April 2, 1984, Roberts executed a Form 2848, Power of Attorney and Declaration of Representative, appointing Freedman and Jacobson as attorneys-in-fact to represent Madison before the IRS. Form 2848 stated that the tax matters of Madison for which the attorneys-in-fact were appointed were as follows:

Type of tax: Partnership

Federal tax form number: 1065 and all related IRC matters

Year(s) or period(s): 1982–1984 [4]

Form 2848 also stated: "The attorney(s)-in-fact (or either of them) are authorized, subject to revocation,[5] to receive confidential information and to perform any and all acts that the principal(s) can perform with respect to the above specified tax matters (excluding the power to receive refund checks, and the power to sign the return ... unless specifically granted ...)."

Subsequently, Jacobson, as attorney-in-fact for Roberts, on two separate occasions signed a Form 872–P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership. The first consent, dated November 5, 1985,[6] extended the period of limitations for assessments relating to Madison's 1982 tax year to June 30, 1987. The second, signed on August 6, 1986,[7] extended the period to December 31, 1987.

Sometime between August and October 1985, while the examination of Madison's 1982 tax filings was ongoing, the IRS initiated a criminal tax investigation of Roberts. The special agent assigned to conduct the criminal investigation did not contact Roberts, who was in France, during the investigation. On December 9, 1986, the investigation was discontinued without a recommendation that Roberts be prosecuted for any tax-related offenses.

On December 24, 1987, the IRS mailed the FPAA with respect to Madison's 1982

4. The notation "—1984" was handwritten next to the typewritten "1982" for the year(s) or period(s) covered by the power of attorney. This notation was not initialed. The IRS has conceded that the handwritten and uninitialed notation "—1984" is ineffective to appoint Freedman or Jacobson for years subsequent to 1982.

In addition, handwritten changes to the address of H.W. Freedman & Co., and of the attorneys-in-fact were made on the form and initialed by "S.J."

5. Roberts revoked the power of attorney in a letter dated December 28, 1986.

6. The consent was countersigned on behalf of the Commissioner of Internal Revenue on November 18, 1985.

7. This form was countersigned on behalf of the Commissioner on August 19, 1986.

tax year to Roberts, as TMP. The FPAA increased the partnership's ordinary income by $704,111, and disallowed a business energy investment credit and an investment tax credit, each in the amount of $7 million. Roberts did not file a petition in the Tax Court for readjustment of the items set forth in the FPAA.[8] But, partners other than the TMP (including the petitioners in the instant suit) filed a timely petition for readjustment in 1988.[9]

Petitioners subsequently sought summary judgment on the ground that the statute of limitations for the assessments had expired prior to the issuance of the FPAA. Petitioners claimed that the consent forms signed by Jacobson did not extend the period of limitations for the individual limited partners because Jacobson was not specifically authorized to extend the period of limitations for them. This is so, they claimed, because the general partner did not file a written statement that met the requirements of Treas. Reg. § 301.6229(b)–1T. The limited partners also contended that the power of attorney executed by Roberts was not sufficient to authorize a representative to extend the period of limitations for the limited partners and, moreover, that Form 2848 was ineffective because it had been altered by handwritten changes.

The Tax Court denied petitioners' motion for summary judgment. The court held that the TMP had, under the terms of the partnership agreement, broad and exclusive powers over the business of the partnership, including the authority to enter into an agreement with the Commissioner to extend the period of limitations under § 6229(b)(1)(B) with respect to all the limited partners. The court reasoned that Roberts therefore also had the authority to delegate this power to his attorney-in-fact to execute consents to extend the period of limitation with respect to all of Madison's partners. The court stated, moreover, that, even if Roberts, *as the TMP*, had not delegated his authority to enter into the agreements with the IRS, Roberts, *as the general partner,* could and did delegate this authority to Jacobson.

The Tax Court rejected petitioners' argument that the consents were invalid because the specific procedures of Treas. Reg. § 301.6229(b)-IT had not been met. The court explained that the language of the regulation is permissive and not mandatory, and that, in any event, "noncompliance with th[e] regulation 'cannot invalidate authority to extend the period of assessment granted by a partnership prior to [the] promulgation of the regulation.'" *Madison Recycling Assocs. v. Comm'r,* 64 T.C.M. (CCH) 1063, 1992 WL 277821 (1992) (quoting *Cambridge Research & Dev. Group v. Comm'r,* 97 T.C. 287, 295, 1991 WL 169192 (1991)). The court, moreover, rejected petitioners' claim that the consents were invalidated due to the alterations to Form 2848.[10]

8. A TMP has ninety days from the date that the FPAA is issued to contest the adjustments by filing a petition for readjustment of the partnership items with the Tax Court, the United States Claims Court, or the federal district court for the district in which the partnership's principal place of business is located. *See* I.R.C. § 6226(a).

9. If the TMP has not filed a petition by the ninetieth day from the date that the FPAA was mailed, any other "notice" partner, as defined under I.R.C. § 6223, or any group of partners who collectively have an interest of five percent or more in the profits of the partnership, may petition the Tax Court, the Claims Court, or the appropriate district court. Such a petition must be filed on or before 150 days from the mailing of the FPAA. *Id.* § 6226(b)(1).

10. Petitioners have not, on appeal, renewed the objection raised in their motion for summary judgment that Form 2848 was invalid as a result of the handwritten alterations to the form. The argument is deemed waived on

Summary judgment having been denied, the case was scheduled for trial on February 7, 2000. On December 28, 1999, petitioners moved for a continuance, seeking to secure evidence relating to the IRS's criminal and civil investigations of Roberts. Petitioners claimed that the information was necessary to support their claim that the criminal investigation and the civil penalties imposed on Roberts created a conflict of interest that had legally removed Roberts's authority to act, personally or through a representative, on behalf of the partnership. The Commissioner filed an opposition, and the Tax Court denied petitioners' motion.[11]

Following the trial, petitioners filed a motion to reopen the proceedings in order to allow them the opportunity to secure the complete administrative file on Roberts, including materials relating to the IRS's criminal investigation. The Commissioner again opposed petitioners' motion, stating (1) that petitioners could have obtained the information through a formal discovery request, but had failed to do so during the ten years since the filing of the partners' 1988 petition for readjustment, and (2) that all relevant materials subject to disclosure, including portions of the criminal investigation file, had been provided to petitioners.[12] The Tax Court denied petitioners' motion.

The Tax Court subsequently issued an opinion, in which it held that the FPAA was timely because Roberts was not operating under any conflict of interest that would have rendered ineffective the consents that he authorized. The court stated that there was nothing to suggest that Roberts "had a powerful incentive to ingratiate himself with the Government." *Madison Recycling Assocs. v. Comm'r*, 81 T.C.M. (CCH) 1496, 2001 WL 339433 (2001). This was the case, the court reasoned, particularly since "there [was] no evidence that Roberts (or his attorney-infact) was aware of the criminal tax investigation at the time the consents were signed." *Id.* The Tax Court also disagreed with petitioners' claim that the § 6700 proceedings resulted in a conflict of interest. The court noted that those proceedings had been completed, and the penalties imposed, prior to Jacobson's execution of the consents. *See id.* This appeal followed.

## DISCUSSION

■ We review the Tax Court's legal conclusions *de novo* and its factual findings for clear error. *See* I.R.C. § 7482(a)(1) ("The United States Courts of Appeals . . . shall . . . review the decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury."); *see also Callaway v. Comm'r*, 231 F.3d 106, 115 (2d Cir.2000). In doing so, " '[w]e owe no deference to the Tax Court's statutory interpretations, its relationship to us being that of a district court to a court of appeals, not that of an administrative agency to a court of appeals.' " *Callaway*, 231 F.3d at 115 (quoting *Exacto Spring Corp. v. Comm'r*, 196 F.3d 833, 838

---

appeal. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir.1995) (citing Fed. R.App. P. 28(a)).

**11.** Thereafter, the partnership filed for bankruptcy. *See Madison Recycling Assocs. v. I.R.S. (In re Madison Recycling Assocs.)*, No. Civ. 00–65, 2001 WL 429805, at *1 (E.D.Ky. Mar.1, 2001). The Tax Court determined that the bankruptcy automatic stay provisions did not apply to the Tax Court proceeding, and the case proceeded to trial.

**12.** The IRS claimed that, pursuant to I.R.C. § 6103, portions of the administrative file and certain documents relating to the criminal investigation of Roberts were not subject to disclosure.

(7th Cir.1999) (Posner, *C.J.*)); *cf. Baizer v. Comm'r*, 204 F.3d 1231, 1233 (9th Cir. 2000) ("Although a presumption exists that the tax court correctly applied the law, no special deference is given to the tax court's decisions.").

The period for assessing income tax attributable to any partnership item (or affected item) for a partnership taxable year does not expire until the date that is three years after the later of (a) the date on which the partnership actually files its information return for the taxable year in question, or (b) the last date for filing such return for such year (without extensions). I.R.C. § 6229(a). In this case, absent extensions, any FPAA for Madison's 1982 taxable year should have been issued by April 15, 1986. Under TEFRA, however, the Commissioner may receive an extension if, before the assessment period expires (including any periods covered by a prior extension), he secures the consent of (a) each and every limited partner or (b) the partnership's TMP or "any other person authorized by the partnership in writing to enter into such an agreement." *Id.* § 6229(b)(1).

■ "The expiration of the period of limitation on assessment is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proving its applicability." *Amesbury Apartments, Ltd. v. Comm'r*, 95 T.C. 227, 240, 1990 WL 128878 (1990); *see Chimblo v. Comm'r*, 177 F.3d 119, 125 (2d Cir.1999). The taxpayer must, first, "make a *prima* *facie* case establishing the filing of the partnership return, the expiration of the statutory period, and receipt or mailing of the notice after the running of the period." *Amesbury Apartments*, 95 T.C. at 240–41. Second, if this showing is made, the burden of production then shifts to the Commissioner to show that the bar of the limitations period is not applicable. *Id.* at 241; *see Transpac Drilling Venture 1982–12 v. Comm'r*, 147 F.3d 221, 224 n. 5 (2d Cir.1998). Third and finally, if the Commissioner succeeds, the burden shifts back to the taxpayer to show that the alleged exception to the expiration of the limitations period is ineffective or otherwise inapplicable. *Amesbury Apartments*, 95 T.C. at 241. The burden of persuasion, however, remains always with the taxpayer. *Id.*

■ Only the third step of the inquiry is implicated here.[13] As the Tax Court rightly determined, petitioners have not met their burden of showing that the consents executed by Jacobson on behalf of Roberts were invalid. As an initial matter, there is no question that Roberts had the authority, both in his capacity as general partner and as the TMP, to enter into binding agreements with the IRS on behalf of the partnership. And, through Form 2848, Roberts, as the general partner for Madison, appointed Jacobson and Freedman as attorneys-in-fact for the partnership for purposes of filing the partnership returns and all related tax matters. As the Tax Court further noted, even if Roberts, *in*

---

13. The parties stipulated that the partnership timely filed its partnership return and that any FPAA, to be timely absent any extensions, was required to have been mailed on or before April 15, 1986. Petitioners have put forth a *prima facie* case, and the Commissioner has met his burden by introducing two facially valid consents that purport to extend the limitations period beyond the date on which the FPAA was mailed. *See Lefebvre v.* *Comm'r*, 47 T.C.M. (CCH) 1572, 1574, 1984 WL 14457 (1984) (holding that a consent to extend the statute of limitations is valid on its face if it was signed prior to the expiration of the limitations period and includes the name of the taxpayer, the signature of the taxpayer or a person authorized to sign on the taxpayer's behalf, and the taxable year to which the agreement relates), *aff'd*, 758 F.2d 1340 (9th Cir.1985) (per curiam).

*his capacity as TMP,* did not delegate his authority to enter into agreements with the IRS, Roberts could, under the terms of the partnership agreement and under New York law,[14] delegate his authority, *as general partner,* to bind the partnership and its partners to an extended limitations period.

Since Roberts could delegate his authority to consent to an extension of the limitations period, the only question that remains is whether he made an effective delegation in this case. Section 6229(b) of the Internal Revenue Code provides, in relevant part, that the limitations period may be extended with respect to all partners by an agreement between the IRS and the TMP or "any other person authorized by the partnership in writing to enter into such an agreement." I.R.C. § 6229(b)(1)(B). The regulations promulgated thereunder (applicable to the 1982 tax year[15]) state that a partnership *may* authorize any person to extend the limitations period by filing a statement to that effect with the IRS. The statement must meet four requirements: (1) it must provide that it is an authorization for a person other than the TMP to extend the assessment period with respect to all partners; (2) it must identify the partnership and the person being authorized by name, address, and taxpayer identification number; (3) it must specify the partnership year(s) for which the authorization is effective; and (4) it must be signed by all persons who are general partners at any time during the year(s) for which the authorization is effective. *See* Treas. Regs. § 301.6229(b)–1T.

The Tax Court, in denying petitioners' motion for summary judgment, conceded that the specific procedures of the regulation were not met in this case. Even if the power-of-attorney Form 2848 were to be deemed to be a "statement" under the regulation, there is no question that the form signed did not specifically provide that it was an authorization for a person other than the TMP to extend the assessment period with respect to all partners. Rather, it gave Freedman and Jacobson broad powers relating generally to tax matters affecting the partnership.

Even though the requirements of § 301.6229(b)–1T are not met, we find that the consents to extend the limitations period are valid. For, § 301.6229(b)–1T was not promulgated until 1987, *see* sec. 301.6229(b)–1T, Temporary Proced. & Admin. Regs., 52 Fed.Reg. 6789 (Mar. 5, 1987); T.D. 8128, 1987–1 C.B. 325, well after the consents were executed. As the Tax Court has held, § 301.6229(b)–1T "cannot invalidate authority to extend the period of assessment granted by a partnership prior to [the] promulgation of the

---

14. Except as provided in the partnership agreement, the grounds for, and extent of, Roberts's authority as a general partner are determined under New York law. New York has adopted the Revised Uniform Limited Partnership Act. *See* N.Y. Partnership Law §§ 90 to 119 (McKinney 1988). Both the partnership agreement and New York law afford to Roberts, as general partner, the same rights and powers given to a partner in a partnership without limited partners. *See id.* § 98.

15. The regulations, which were promulgated in 1987, *see* sec. 301.6229(b)–1T, Temporary

Proced. & Admin. Regs., 52 Fed.Reg. 6789 (Mar. 5, 1987); T.D. 8128, 1987–1 C.B. 325, apply with respect to any partnership taxable year beginning after September 3, 1982, and with respect to any taxable year beginning on or before and ending after September 3, 1982, if with respect to that taxable year there is an agreement entered into pursuant to section 407(a)(3) of the TEFRA. *See* 52 Fed.Reg. 6779 (1987); T.D. 8128, 1987–1 C.B. 325. Madison's partnership return filed for the 1982 tax year is for the period between October 1, 1982 and December 31, 1982.

regulation." *Cambridge Research & Dev. Group,* 97 T.C. at 295; *see also* I.R.C. § 7805 (stating that treasury regulations do not generally apply retroactively).[16]

Petitioners, relying on our decision in *Transpac Drilling Venture 1982–12 v. Commissioner,* 147 F.3d 221 (2d Cir. 1998), argue, however, that the consents are invalid because Roberts (and, thus, Jacobson) was laboring under a conflict of interest that legally removed his (and his representative's) authority to act on behalf of the partnership or its partners. In *Transpac,* while the IRS was pursuing a civil audit of the Transpac partnerships, the IRS began a criminal investigation of both Transpac's promoter and its tax matters partners. *See id.* at 223–24. During the course of the criminal investigation, the tax matters partners became government witnesses in the investigation of the promoter. *See id.* at 223. In exchange for their cooperation, the tax matters partners either were granted immunity from prosecution or were offered suspended sentences. *See id.* Because the statute of limitations applicable to the civil examination was about to expire, the IRS solicited consents to extend the limitations period from Transpac's limited partners, who refused to consent. *See id.* at 224. The IRS then approached the tax matters partners—who at the time were targets of the ongoing criminal investigation and were cooperating with the IRS—and received consents from them on behalf of all of the Transpac partners. *See id.*

In *Transpac,* we held that a TMP, although an entity created by statute, owes a fiduciary duty to his partners. Since the TMP's acts bind his partners, the partners secure their due process protection only as a result of the TMP's faithful discharge of his fiduciary obligations. *Id.* at 225. Therefore, "where serious conflicts exist, a TMP may be barred from acting on behalf of the partnership." *Id.* at 227. Because Transpac's TMPs were seeking favorable treatment with respect to their own criminal exposure by cooperating with federal criminal prosecutors, we found that they had "a powerful incentive to ingratiate themselves to the government." *Id.* We observed, moreover, that "the criminal investigation created an overwhelming pressure on the TMPs to ignore their fiduciary duties to the limited partners." *Id.* Accordingly, we held that the consents signed by the TMPs did not bind Transpac's limited partners.

Our decision in *Transpac* was based on the presence of an actual conflict. We did not hold that the existence of a criminal investigation by the IRS automatically disqualifies a TMP or his representative from negotiating or entering into agreements with the IRS. *Cf. Phillips v. Comm'r,* 114 T.C. 115, 132, 2000 WL 225899 (2000) ("[T]he mere existence of an investigation [targeting the tax matters partner does not, in and of itself,] subvert a tax matters

---

**16.** At first glance, it is unclear whether, as has been held by the Tax Court, the language in Treas. Reg. § 301.6229(b)–1T is permissive rather than mandatory. *See Cambridge Research & Dev. Group,* 97 T.C. at 300–01 ("Nothing in section 6229(b) ... suggests a requirement that the necessary writing authorizing a person other than the tax matters partner to extend the period for assessment is limited to one specifically referring to a consent agreement under section 6229(b)(1)(B)."); *Amesbury Apartments,* 95 T.C. at 242–43 ("There is no mandatory requirement that a partnership give authority to a person to execute a consent utilizing specific procedures, such as those outlined in the temporary regulation."); *see also id.* at 243 (stating that "authority to 'perform any and all acts * * * with respect to the above specified tax matters' " in a power of attorney was sufficient). Since no resolution of the issue is needed to decide this case, we express no opinion on the matter.

partner's judgment and bend him to the government's will in dereliction of his fiduciary duties to his partners." (internal quotation marks omitted)), *aff'd*, 272 F.3d 1172 (9th Cir.2002). We acknowledged that this is a fact-dependent inquiry, and that, in *Transpac*, "[t]he facts of the matter [spoke] for themselves." *Transpac*, 147 F.3d at 227.

The case before us is readily distinguishable from *Transpac*. There is no evidence in this case that suggests that Roberts had any incentive to ingratiate himself to the government. There is also no suggestion that Roberts was a prospective government witness or that the consents were given to the IRS in exchange for a grant of immunity or other inducements relevant to the IRS's investigations. Any *quid pro quo* is unlikely here, where there is no evidence that either Roberts or his representative was aware of the IRS's criminal investigation.[17] As the Tax Court rightly acknowledged, "[u]nless [Roberts] was aware of the existence [or the prospect] of the criminal investigation against him, we fail to see how Roberts, acting personally or through his attorney-in-fact, could have been influenced by personal concerns in such a way that he could not properly discharge his fiduciary duties to the limited partners of Madison." *Madison Recycling*, 81 T.C.M. (CCH) at 1496.

We also agree with the Tax Court's position that the § 6700 proceedings and the civil penalties imposed thereunder did not result in a conflict of interest. The injunction against Roberts was issued in August 1983 and civil penalties assessed in January 1985; the consents were executed in November 1985 and August 1986, after the § 6700 proceedings were closed. And, there is no suggestion that Roberts anticipated a criminal investigation or that the subsequent consents were part of a scheme to curry favor with the IRS in exchange for a decreased civil penalty.

Based on the record before us, we are unwilling to infer an abandonment of fiduciary duties by Roberts. For the same reasons, we agree with the Tax Court's finding that Jacobson was not himself operating under a conflict of interest simply because he was Roberts's personal representative in Roberts's dealings with the IRS.

## CONCLUSION

In sum, we conclude that petitioners have not met their burden of showing that the consents executed by Jacobson on behalf of Roberts were invalid or otherwise ineffective.[18] The FPAA was therefore timely, and the judgment of the Tax Court is hereby AFFIRMED.

---

17. The IRS agent in charge of the criminal investigation testified that, to the best of his knowledge, neither Roberts nor Jacobson was aware of the investigation. Petitioners had an opportunity to ascertain the extent of Roberts's and Jacobson's awareness of the IRS investigation at trial, but failed to call either to testify as witnesses. Based on the record before it, the Tax Court made a factual finding that Roberts and Jacobson were unaware of the criminal investigation. This finding is not clearly erroneous.

18. Petitioners make a series of other arguments, all of which we have considered and summarily reject as meritless.