In re Elvin L. MARTINEZ, Debtor.

Elvin L. Martinez, Plaintiff,

v.

United States of America, Department of the Treasury, Internal Revenue Service, Defendant.

Bankruptcy No. 02–15471.
Adversary No. 03–1232.

United States Bankruptcy Court,
E.D. Louisiana.

April 13, 2007.

---

Eric J. Derbes, Frederick L. Bunol, The Derbes Law Firm, LLC, Metairie, LA, for Plaintiff.

Candice Turner, John M. Bilheimer, Rebeccah Bower, U.S. Department of Justice, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

JERRY A. BROWN, Bankruptcy Judge.

This matter came on for trial on October 19 and 20, 2006 on the complaint of Elvin Martinez, the debtor, against the Internal Revenue Service of the United States under 11 U.S.C. § 523(a)(1)(A) seeking a discharge of the tax obligations of Mr. Martinez. For the reasons set forth below, the court finds that the tax obligations of the debtor for the years 1990 through 1993 are not dischargeable, and the tax obligations of the debtor for the years 1987 through 1989 are dischargeable.

## I. *Procedural History*

The debtor filed a petition under Chapter 7 of the United States Bankruptcy Code on August 2, 2002.[1] No proofs of claim were filed in the case, and the case was designated as a "no asset" case by the Chapter 7 trustee. A discharge order was entered on November 4, 2002, and the case was closed on November 14, 2002. On October 3, 2003 the case was reopened to allow the debtor to file a complaint seeking a determination that the income tax liabilities owed by the debtor for the years 1987

through 1993 were not excepted from the discharge under § 523(a) of the Bankruptcy Code. The IRS answered the complaint, and the court held a hearing on cross motions for summary judgment on November 17, 2004. On February 9, 2005 the court ruled in favor of the IRS holding that the tax liability was not discharged. The debtor appealed to the district court, and on June 30, 2005 the case was remanded to the bankruptcy court for further evaluation in light of a March 25, 2005 decision issued by the United States Court of Appeals for the Ninth Circuit, *River City Ranches # 1, Ltd. v. CIR,* 401 F.3d 1136 (9th Cir.2005). Upon remand, the court found that in light of the district court's directive there were unsettled issues of material fact in the case and entered an order denying summary judgment on March 2, 2006. A two day trial was held on October 19 and 20, 2006.

## II. *Background Facts*

This case arises from the debtor's involvement in several partnerships formed by Walter J. Hoyt, III. Over a period of approximately 30 years, Hoyt formed numerous partnerships to own, breed and manage sheep and cattle. Hoyt used these partnerships as illegal tax shelters in order to take tax deductions, claim tax credits, and defraud his partners. Although Hoyt was under investigation by the IRS and other government agencies for a number of years, it was not until 1999 that he was indicted by the U.S. government. Hoyt was eventually convicted for conspiracy, mail fraud, bankruptcy fraud, and money laundering. He is currently serving a lengthy sentence in federal prison.[2]

 The debtor first met with a Hoyt representative in December 1985, and

---

1. 11 U.S.C. § 101 *et seq.*

2. *See U.S. v. Hoyt,* 47 Fed.Appx. 834, 836 (9th Cir.2002).

signed three subscription agreements to join Hoyt partnerships.[3] A fourth subscription agreement was signed by Hoyt in the debtor's name.[4] The debtor continued in these partnerships until 1994.[5] Hoyt was designated as the Tax Matters Partner ("TMP") in all of the Hoyt partnerships.[6] Generally, the IRS has three years from the later of the date the partnership return was filed or three years from the last day for filing the return for the year to issue a notice of Final Partnership Administrative Adjustments ("FPAA").[7] An FPAA is the notice that the IRS sends to the TMP when it has a disagreement with a partnership over the amount of a gain or a loss and is the equivalent of a statutory notice of deficiency that the IRS would send to an individual or a corporation.[8] The three year time period for issuing a notice of FPAA can be extended with the consent of the TMP. Hoyt signed extensions for the partnerships that the debtor was involved with between February 1991 and March 1993 for the tax years 1987, 1988 and 1989.[9] The extensions gave the IRS until December 31, 1993 to issue notices of FPAA. In late 1993 the IRS sent notices of FPAA to Hoyt, the TMP for the partnerships for the tax years 1987 through 1989.[10] The parties agree that the notices of FPAA sent for the years 1987 through 1989 were timely only if the extensions granted by Hoyt for those tax years were valid. The IRS sent timely notices of FPAA to Hoyt for the tax years 1990 through 1993 without needing any extensions.[11] Upon the mailing of an FPAA, the TMP for the partnership has 90 days to file a petition challenging the FPAA with the tax court.[12] Hoyt filed timely petitions in tax court contesting all of the FPAAs for the partnerships for the years 1987 through 1993.[13] All of those petitions are still being litigated in the tax court, so to date there has been no final resolution of the petitions. Hoyt was eventually removed as the TMP for all of the Hoyt partnerships by motion of the IRS in 2003.[14]

3. Trial Transcript of October 19, 2006 at p. 173–176; Exhibits A, B and C.

4. Trial Transcript of October 19, 2006 at p. 176–178; Exhibit F.

5. Trial Transcript of October 19, 2006 at p. 180.

6. The partnerships in this case are subject to the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. § 6221–6234, which governs administrative and judicial proceedings related to partnership income tax. Prior to the enactment of TEFRA, these proceedings were conducted at the level of the individual partner. Under TEFRA, a TMP is "the partner designated to act as a liaison between the partnership and the [IRS] in administrative proceedings, and as the representative of the partnership in judicial proceedings." *Madison Recycling Associates v. CIR*, 295 F.3d 280, 281–82 (2nd Cir.2002). As TMP Hoyt was in charge of all correspondence with the IRS regarding the tax problems of the partnerships. The debtor claims that this al-

lowed Hoyt to perpetuate his fraudulent schemes.

7. 26 U.S.C. § 6229(a).

8. Trial Transcript of October 19, 2006 at p. 95–96.

9. Exhibits AK, AO, AR, AV, AZ, BC, BG, BJ, BM, and BP.

10. Exhibits AL, AP, AS, AW, BA, BD, BH, BK, BN, and BQ.

11. Exhibits BT, BV, BX, CA, CC, CE, CG, CJ, CL, CN, CP, and CR.

12. 26 U.S.C. § 6226(a).

13. Exhibits AM, AN, AQ, AT, AU, AX, AY, BB, BE, BF, BI, BL, BO, BU, BW, BY, CB, CD, CF, CH, CK, CM, CO, CQ, and CS.

14. Trial Transcript of October 19, 2006 at p. 151–52; Exhibit JR.

## III. *Legal Analysis*

### A. Sections 523(a)(1)(A) and 507(a)(8)(A)(iii) of the Bankruptcy Code [15]

■ Section 523(a)(1)(A) of the Bankruptcy Code states:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(1) for a tax or a customs duty-

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed.

Section 507(a)(8)(A)(iii) of the Code states:

Allowed unsecured claims of governmental units, only to the extent that such claims are for-

(A) a tax on or measured by income or gross receipts-

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

The court addressed its interpretation of § 507(a)(8)(A)(iii) in the memorandum opinion for this case dated February 9, 2005.[16] The court continues to hold that § 507(a)(8)(A)(iii) refers to taxes which are still assessable after the commencement of the case, including taxes for which a tax court case is pending at the time of the bankruptcy filing. At issue then is whether these taxes are still assessable in light of the evidence presented at the trial.

■ In most actions to determine the dischargeability of a debt under § 523(a), the creditor seeking to have its debt excepted from discharge bears the burden of proof.[17] The creditor need only prove its case by a preponderance of the evidence.[18] In determining whether a particular debt falls within one of the exceptions to § 523, the statute should be narrowly construed against the objecting creditor and in favor of the debtor.[19]

### B. The Tax Court Petitions—Tax Years 1990–1993

The IRS argues that with respect to the years 1990 through 1993 the IRS timely issued the FPAAs within three years of the filing of the partnership returns, so no consents to extend the assessment period for those years was required. In response to the timely filed FPAAs, Hoyt filed tax court petitions contesting the FPAAs. The debtor does not contest that the FPAAs were timely but instead contends that the tax court petitions filed by Hoyt were invalid because Hoyt was operating under a disabling conflict of interest when he filed the petitions. There do not appear to be any Fifth Circuit Court of Appeals cases addressing this issue, but the IRS cites *Martin v. C.I.R.*, 436 F.3d 1216 (10th Cir.2006), *O'Neill v. U.S.*, 44 F.3d 803 (9th Cir.1995), *United States v. Shahadi*, 340 F.2d 56 (3rd Cir.1965), and *American Equitable Assurance Company v. Hel-*

---

15. Because this case was filed before the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") and is therefore not subject to the provisions of BAPCPA, all references to the Bankruptcy Code in this opinion will refer to the Code prior to its amendment by BAPCPA.

16. *In re Martinez*, 323 B.R. 650, 652 (Bankr. E.D.La.2005).

17. *Matter of Thirtyacre*, 36 F.3d 697 (7th Cir. 1994); 4 Collier on Bankruptcy ¶ 523.04 (15th ed. rev.2006).

18. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

19. *Matter of Boyle*, 819 F.2d 583 (5th Cir. 1987); 4 Collier on Bankruptcy ¶ 523.05 (15th ed. rev.2006).

*vering,* 68 F.2d 46 (2nd Cir.1933) for the proposition that even an unauthorized or otherwise defective petition to the tax court challenging an FPAA extends the statute of limitations for the IRS to make an assessment of a taxpayer's income.

*American Equitable Assurance Company v. Helvering,* 68 F.2d 46 (2nd Cir.1933), held that the 60 day period the IRS had to make an assessment after issuing a notice of deficiency was suspended pursuant to § 277 of the Revenue Act of 1926 once a petition for redetermination was placed on the tax court docket, regardless of the fact that the petition was later found to be defective:

> Even though the Board dismissed this proceeding ... for want of jurisdiction ... the placing of the proceeding on its docket gave it whatever right to act is involved in determining whether or not the petition was sufficient to give it jurisdiction to decide the matter on the merits. At any rate, a proceeding had been commenced which required the Board of Tax Appeals to make a decision though not necessarily on the merits. Because the effect of the passage of time would be the same whether the Board made its decision on the merits or on some other ground, if the period stated in the statute of limitations meantime expired, it is reasonable to believe that Congress did not intend to have the time a proceeding was pending before the Board counted any more when the decision was a dismissal for want of jurisdiction than when it was not.[20]

A subsequent decision by the Third Circuit Court of Appeals followed the Second Circuit's reasoning, holding that, "the cases construing § 277 have uniformly construed it in the broadest fashion, to stop the running of the statute when matters are being litigated in the Tax Court under any circumstances."[21]

In the *O'Neill* case the Ninth Circuit discusses 26 U.S.C. § 6229(d), a descendent of § 277 that applies specifically to partnership returns.[22] In *O'Neill* the IRS mailed the timely FPAA notice to the TMP, who unbeknownst to the IRS, the tax court, any of the parties or their counsel had filed for bankruptcy three months before the FPAA was mailed. The TMP then filed a petition with the tax court, which suspended the statute of limitations period under § 6229(d). The court held that although the filing of the bankruptcy automatically caused the TMP to lose his TMP status, the tax court petition he filed when he was no longer the TMP was nonetheless effective in suspending the statute of limitations. The *O'Neill* court's analysis was based on the effect of the filing of a tax court petition, namely that once the petition is filed the IRS is prevented from assessing a tax while a petition is pending before the tax court. To refuse to suspend the statute of limitations during the period a petition (even a defective petition) is pending risks that the IRS would be completely barred from assessing a properly owed tax.[23] "Because the Commissioner had to refrain from assessing

---

**20.** *American Equitable Assurance Co.,* 68 F.2d at 47.

**21.** *Shahadi,* 340 F.2d at 59.

**22.** 26 U.S.C. § 6229(d) states:

> If notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in sub-

section (a) (as modified by other provisions of this section) shall be suspended-
(1) for the period during which an action may be brought under section 6226 (and, if a petition is filed under section 6226 with respect to such administrative adjustment, until the decision of the court becomes final), and
(2) for 1 year thereafter.

**23.** *O'Neill,* 44 F.3d at 806.

the tax until the case was final ... when the petition turned out to be defective and the limitation period had run in the interim, the Commissioner could not assess the tax under the taxpayer's theory. Clearly, this is not what Congress intended." [24]

■ In the instant case the debtor contends that the IRS had a duty to remove Hoyt as the TMP, which duty it failed, and thus, the IRS's actions in failing to remove Hoyt as TMP until 2003 are such that the petition was invalid and the statute of limitations was never suspended. The debtor argues that *O'Neill* does not apply here because the TMP in *O'Neill* was automatically removed by statute when he filed for bankruptcy; the removal as TMP triggered ineligibility to file a tax court petition on behalf of the partnership, and thus, the ineligibility to file the tax court petition was based on the fault of the TMP, not the IRS. The court does not agree with this interpretation of *O'Neill*. The decision in *O'Neill* was not based on which party was at fault in causing the filed tax court petition to be defective; it was based on the effect that the filing of a tax court petition has on the IRS's ability to assess a tax.[25]

*Martin* interprets 26 U.S.C. § 6503(a), a provision that applies to individual taxpayers, not partnerships, but that is similar to § 6229(d) in that both sections contem-plate the effect of a petition filed with the tax court challenging an assessment by the IRS on the statute of limitations, much like § 277, the predecessor statute discussed in *American Equitable Assurance* and *Shahadi.*[26] In *Martin* a tax court petition challenging an assessment was filed by the taxpayer's attorney without the taxpayer's authorization. The *Martin* court follows the same reasoning as the *O'Neill* court, stating:

> If the statute of limitations were to continue to run after the filing of the petition with the tax court that resulting in the placement of a proceeding on the court's docket, in some instances the IRS would be forced to stand idly by during the course of litigation while the statute of limitations for assessment expired. There is no authority indicating that Congress intended such a result.[27]

■ Here, the petitions filed by Hoyt are still pending before the tax court, so no final assessment has been made. The debtor contends that because these petitions were improperly filed, the statute of limitations has expired, and the IRS can no longer make an assessment. The debtor has not, however, directed the court to rulings by any court that support the debtor's position, and the court has found none in its own research. Thus, the court holds that under the reasoning of *Martin,*

**24.** *Id.*

**25.** *See also Martin*, 436 F.3d at 1224 (the reasoning of *Eversole*—as well as the reasoning of *American Equitable Assurance Co., O'Neill*, and *Shahadi* does not suggest that the case can be distinguished on the basis of the relationship of the person who puts the dispute on the tax court's docket to the subject of the proceeding).

**26.** 26 U.S.C. § 6503(a) states:

> The running of the period of limitations provided in section 6501 or 6502 (or section 6229, but only with respect to a deficiency described in paragraph (2)(A) or (3)

of section 6230(a)) on the making of assessments or the collection by levy or a proceeding in court, in respect of any deficiency as defined in section 6211 (relating to income, estate, gift and certain excise taxes), shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

**27.** *Martin*, 436 F.3d at 1221.

*O'Neill, Shahadi,* and *American Equitable Assurance Co.* the statute of limitations has not expired but rather was suspended by the filing of the petition even if the petition was improperly filed. The issue of whether the petition was improperly filed appears to be something that should be raised before the tax court as a jurisdictional problem. Because the taxes owed to the IRS by the debtor for the years 1990, 1991, 1992 and 1993 have not yet been assessed, and because the statute of limitations for making that assessment has not yet expired, those taxes are still assessable within the meaning of 11 U.S.C. § 507(a)(8)(A)(iii). Therefore, the court holds that the taxes for the tax years 1990 through 1993 are non-dischargeable pursuant to § 523(a)(1)(A) and § 507(a)(8)(A)(iii) of the Bankruptcy Code.

## C. The Extensions Signed by Hoyt—Tax Years 1987–1989

The district court remanded this case, and this court held a trial for the purpose of taking evidence on the question of whether Hoyt's actions in granting the IRS extensions for the assessment periods for the years 1987, 1988 and 1989 constituted a disabling conflict of interest such that the extensions are not valid in light of the Ninth Circuit's recent decision in *River City Ranches # 1.*[28]

■■ The expiration of the period of limitation on an assessment is an affirmative defense, and the party raising it carries the burden of proof. The taxpayer must first make a *prima facie* case establishing the filing of the partnership return,

the expiration of the statutory period, and the mailing of the notice after the running of the period. If this showing is made, the burden of production shifts to the IRS to show that the bar of the limitations period is not applicable. If the IRS is successful, then the burden shifts back to the taxpayer to show that the alleged exception to the expiration of the limitations is ineffective or otherwise inapplicable. The burden of persuasion always remains with the taxpayer.[29] In this case, there is no question that the first two steps have been proved. The burden of proof, therefore, now shifts to the taxpayer to show that the extensions signed by Hoyt are invalid.

*River City Ranches # 1* involves a different group of Mr. Hoyt's partnerships that were apparently quite similar to the partnerships with which the debtor had become involved. In *River City Ranches # 1* Hoyt had extended the periods for which the IRS could make adjustments for the partnerships, and the partnerships argued that the extensions were invalid because Hoyt executed them while disabled by conflicts between his interests and those of his partners. The partners appealed a decision by the Tax Court on the grounds that the Tax Court improperly denied discovery pertinent to the circumstances surrounding Hoyt's granting the extensions. Although the question of whether Hoyt's actions constituted a disabling conflict was not before the Ninth Circuit, the court had found on a previous occasion that a TMP may lack the capacity to bind his partners and the partnership when the TMP operates under a conflict of interest.[30] The *River City Ranches # 1*

---

**28.** 401 F.3d 1136 (9th Cir.2005). Although this court is not bound by the decisions of the Ninth Circuit, most of the litigation involving the Hoyt partnerships has taken place in that Circuit's lower courts. For the sake of consistency, this court is inclined to follow the Ninth Circuit's holdings in the Hoyt cases in the absence of contrary controlling decisions by the Fifth Circuit.

**29.** *Madison Recycling Associates v. C.I.R.,* 295 F.3d 280, 286 (2nd Cir.2002); *Amesbury Apartments, Ltd. v. Commissioner,* 95 T.C. 227, 240–41, 1990 WL 128878 (1990).

**30.** *Phillips v. Commissioner,* 272 F.3d 1172 (9th Cir.2001).

court found it possible that such a conflict could exist between Hoyt and the partners in his partnerships:

The extensions of the limitations periods within which the IRS could issue Adjustments may have been against the partners' interests but in Hoyt's interest. The sooner the IRS issued the Adjustments, the more difficult it would be for the IRS to defend them. Additionally, because the partners had in fact claimed tax benefits they were not entitled to, it was in their interest for the Adjustments to be issued sooner rather than later, even if the IRS could successfully defend the Adjustments. Delay would mean even greater penalties and interest when eventually the back-taxes were levied. Finally, it was in the partners' interest to receive the strong indication, which the Adjustments provided, that Hoyt was looting the partnerships. The Tax Court noted that such measures by the IRS led some partners to withdraw from other partnerships and to challenge Hoyt's management of them-by means that included a civil fraud suit. Hoyt's interests appear to have run in the opposite direction-toward delaying as long as possible any threat to the house of cards he had constructed and kept standing since 1971. The extensions he signed would, and did, forestall the issuance of Adjustments that would have contributed to tensions with his partners and threatened his management of the partnerships. Facing the threat of a potential and then an actual IRS headcount that would prove his crimes, Hoyt might well have found it in his interest to offer any concession to the IRS that did not harm him personally, in the hope that it would put off the day of reckoning.[31]

Vacating a portion of the Tax Court's judgment, the Ninth Circuit determined that the partners were entitled to additional discovery so that they could attempt to show that Hoyt was in fact operating under a disabling conflict of interest when he signed the extensions.

■ Here, the debtor argues that because Hoyt was under criminal investigation by the IRS from July 28, 1989 to October 2, 1990 and again from August 31, 1993 to October 7, 1993, the IRS had a duty to remove Hoyt as TMP. The IRS contends that it has no duty to remove the TMP simply because a criminal investigation has commenced, and further points out that even if it had such a duty, the extensions were all signed between February 1991 and March 1993—a gap in time between the two different IRS criminal investigations of Hoyt.

The debtor cites the Second Circuit's decision in *Transpac Drilling Venture v. C.I.R.* in support of his position.[32] *Transpac* held that, "where serious conflicts exist, a TMP may be barred from acting on behalf of the partnership."[33] In *Madison Recycling Associates v. Commissioner*, however, the Second Circuit elaborated: "Our decision in *Transpac* was based on the presence of an actual conflict. We did not hold that the existence of a criminal investigation by the IRS automatically disqualifies a TMP or his representative from negotiating or entering into agreements with the IRS."[34]

■ The court agrees that the mere existence of a criminal investigation by the IRS triggers no duty on the part of the

---

31. 401 F.3d at 1143.

32. *Transpac Drilling Venture v. C.I.R.,* 147 F.3d 221 (2nd Cir.1998).

33. *Id.* at 227.

34. *Madison Recycling Associates v. Commissioner,* 295 F.3d 280, 288 (2nd Cir.2002).

IRS to remove the TMP of a partnership. "The Commissioner has no obligation under the Constitution to apprise investors of the character of their TMPs or even of their criminal propensities. Knowledge that Hoyt had once been a criminal was not knowledge that he was acting criminally in a different partnership. Suspicion that he might have been did not trigger a duty to inform persons who might thereby be harmed." [35]

 It is a matter of discretion for the IRS to determine whether and when to remove a TMP from his duties under the governing statutory language of TEFRA, found at 26 U.S.C. §§ 6221–6234. Section 6231(c), which should be read in conjunction with Treasury Regulation § 301.6231(c)–5, provides the statutory framework within which removal of a TMP should be analyzed.[36] These statutory provisions were thoughtfully analyzed by the tax court in *Mekulsia v. C.I.R.*:

> It is clear that section 301.6231(c)–5T does not require the Commissioner to treat partnership items as nonpartnership items at the commencement of every criminal tax investigation of a partner. Accordingly, the Commissioner has discretion to determine in which instances a criminal investigation interferes with the effective and efficient enforcement of the internal revenue laws.... The regulation at issue vests discretion in the Commissioner to determine if and when to notify a partner that he or she is under criminal investigation.[37]

Thus, this court holds that the IRS had no duty to remove Hoyt as TMP even though the IRS had opened several criminal investigations into Hoyt's activities, and the IRS had suspicion that Hoyt was engaged in fraudulent activities.

 This court does not agree, however, with the IRS's contention that Hoyt was not operating under a disabling conflict of interest when he signed the extensions. The Second Circuit in *Transpac Drilling Venture v. C.I.R.* also had occa-

---

**35.** *Phillips v. C.I.R.*, 272 F.3d 1172, 1174 (9th Cir.2001).

**36.** Section 6231(c) reads in part:

(1) This section applies in the case of—
(B) criminal investigations ...
(2) Items may be treated as nonpartnership items.—To the extent that the Secretary determines and provides by regulations that to treat items as partnership items will interfere with the effective and efficient enforcement of this title in any case described in paragraph (1), such items shall be treated as nonpartnership items for purposes of this subchapter.
(3) Special rules.—The Secretary may prescribe by regulation such special rules as the Secretary determines to be necessary to achieve the purposes of this subchapter in any case described in paragraph (1).
Treasury Regulation § 301.6231(c)–5 reads: The treatment of items as partnership items with respect to a partner under criminal investigation for the violation of the internal revenue laws relating to income tax will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner to which the criminal investigation relates shall be treated as nonpartnership items as of the date of which the partner is notified that he or she is the subject of criminal investigation and receives written notification from the Service that his or her partnership items shall be treated as nonpartnership items. *The partnership items of a partner who is notified that he or she is the subject of a criminal investigation shall not be treated as nonpartnership items under this section unless and until such partner receives written notification from the Service of such treatment* (emphasis added). Prior to October 4, 2001, this section was a Temporary Treasury Regulation and was designated § 301.6231(c)–5T.

**37.** *Mekulsia v. C.I.R.*, T.C. Memo.2003–138 at 12, 2003 WL 21107687 (U.S.Tax Ct.2003).

sion to interpret § 6231(c) and Treas. Reg. § 301.6231(c)–5 in the context of the IRS's duties under those sections: "The Special Enforcement Provision of TEFRA is concerned with efficient administration of the tax law. Accordingly, it requires the Secretary to promulgate regulations that serve that interest." [38]

■■■■ The role of the TMP and its importance to the partnership is well described by the tax court in *Computer Programs Lambda, Ltd. v. Commissioner:*

> The tax matters partner is the central figure of partnership proceedings.... He is required to keep all partners informed of the status of administrative and judicial proceedings involving the partnership.... In the execution of these responsibilities a tax matters partner acts as a fiduciary. His personal interest, if any, is beside the point.... The detailed statutory procedures for partnership level audits and litigation contemplate the continual presence of one tax matters partner, and the procedures cannot operate unless the tax matters partner is capable of acting on the partnership's behalf regardless of his personal tax posture. As the fiduciary of the partnership's interest in the proceeding, the tax matters partner's initiative (or failure to take initiative) is plainly designed to affect the rights of all partners in the partnership.[39]

Thus, under existing case law and by statutory designation, the TMP operates in a fiduciary role *vis-a-vis* his other partners, and the Secretary of the Treasury has the responsibility to enact regulations that promote efficient administration of the tax laws. This responsibility encompasses providing direction to the IRS as to how to proceed in the event a TMP is not acting in accordance with his fiduciary duties to his partners. Indeed, as the *Transpac* court noted:

> The Secretary undoubtedly has the authority under the Special Enforcement Provision of TEFRA to promulgate reasonable regulations providing for the removal and the replacement of TMPs in the event that a conflict of interest develops. Such regulations would presumably avoid the difficulty that undermined the regulations that the Service sought to apply in this case: namely, that they vested sole authority in the IRS to determine in its own discretion when such a conflict had arisen.... The elimination of conflicts, even if not addressed in the existing regulations, is surely an appropriate concern to the effective and efficient administration of the tax laws.[40]

A fiduciary is defined as, "1. A person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor. 2. One who must exercise a high standard of care in managing another's money or property." [41] This court denied the summary judgment motion and took evidence to determine whether Hoyt was acting as a fiduciary should when he signed the extensions for the partnerships in this case.

At trial, the debtor introduced persuasive evidence to show that Hoyt was not acting as a fiduciary to his partners. First, the debtor introduced evidence showing that Hoyt was committing fraud

---

**38.** *Transpac Drilling Venture v. C.I.R.,* 147 F.3d 221, 227 (2nd Cir.1998).

**39.** *Computer Programs Lambda, Ltd. v. Commissioner,* 89 T.C. 198, 205–06, 1987 WL 42563 (1987).

**40.** *Transpac Drilling Venture v. C.I.R.,* 147 F.3d 221, 228 and FN9 (2nd Cir.1998).

**41.** Black's Law Dictionary 658 (8th ed.2004).

against and deceiving his partners. On March 29, 1989 the IRS's district director sent a memo to the IRS's assistant regional commissioner requesting permission to issue pre-filing notification letters to taxpayers involved in Hoyt's partnerships that were marketed in 1987 for the 1988 tax year.[42] The attachment to the memo reports the IRS Examination Division's stance on Hoyt's activities. The report states: "It is the Government's position that by furnishing K–1's to investors, along with preparing their individual tax returns reflecting Hoyt partnership losses, Hoyt has made a false and fraudulent statement to these investors."[43] The report also discusses various other illegal Hoyt activities. On July 2, 1989 an agent with the IRS sent a memo to the district counsel regarding the Hoyt case.[44] In that memo the agent outlined his contacts with the FBI regarding Hoyt and the cattle partnerships. Among other things the memo outlined problems with shortages of cattle inventory, partnership tax issues, overvaluation of cattle, and Hoyt's preparation of partnership tax documents. The memo emphasizes Hoyt's control over all aspects of the cattle partnerships and tax documents, and that Hoyt was clearly committing various illegal acts. A summary of the IRS's case against Hoyt with respect to a penalty under section 6700 of the Internal Revenue Code dated September 20, 1990 was also introduced into evidence.[45] This summary details the various accounting irregularities of the Hoyt partnerships including overvaluing of cattle, counting cattle more than once, and incorrect allocation of losses to partners, among other things. On June 19, 1991 in a memo to file, an IRS

agent recounted a meeting he had that day with a former Hoyt employee who had been responsible for audit representation before the IRS with respect to various Hoyt investors.[46] The memo details various fraudulent accounting practices engaged in by the Hoyt organization for tax purposes.

On December 12, 1991 the IRS sent a notice to Hoyt in which it advised Hoyt that it was considering the imposition of return preparer penalties for the tax years 1989 and 1990.[47] The letter stated that the preparer penalties were for understatements on returns for partnerships as a result of "willful or reckless conduct," or an "unrealistic position" taken with respect to returns prepared by Hoyt. Also on December 12, 1991 the IRS met with Hoyt and asked him to sign extensions of the statute of limitations for the 1987 and 1988 tax years for the partnerships.[48] Clearly, Hoyt's actions in deceiving and defrauding his partners were well known to the IRS, either before, or at the same time that it sought to have the extensions signed by Hoyt. The court is not finding that the IRS had any duty to notify the partners or otherwise act to remove Hoyt as the TMP. The court does find, however, that this knowledge should have put the IRS on notice that a conflict of interest between Hoyt and his partners existed such that the IRS should not have relied on Hoyt's ability to carry out his duties as a fiduciary to his partners.

Second, the debtor introduced evidence showing that Hoyt was attempting to extract concessions of a quid pro quo nature from the IRS in exchange for agreeing to

---

**42.** Exhibit HQ.

**43.** Exhibit HQ at p. 5.

**44.** Exhibit HR.

**45.** Exhibit HU.

**46.** Exhibit IA.

**47.** Exhibit IE.

**48.** Exhibit IH at ¶ 2.

sign the extensions. On December 13, 1991, the day after the December 12th meeting referenced above, the IRS received a fax from Hoyt stating that Hoyt would agree to sign the statute of limitation extensions for the tax years 1987 and 1988 if the IRS would agree to "extend to Henry Nathaniel, myself and the other preparers the opportunity to sign Statute of Limitation extensions for the assessment of preparer and any other penalties the IRS may determine should be assessed for the years 1987 through 1989." [49] Hoyt further elaborated, "I have signed the 872–P's and they are at the Elk Grove Office. When you deliver to Kathie Nathaniel the other two sets of extensions this letter requests, she will hand you the signed extensions we now possess.... If you do not offer us Statute of Limitation extensions for the assessment of penalties, then Kathie will not give you the signed extensions for the P/S." [50]

On May 21, 1992 the manager of the IRS group working on audits of the Hoyt partnerships sent a letter to Hoyt, which among other things outlined her understanding of Hoyt's position with respect to signing extensions: "You will not extend the statutes of limitations on the various partnerships unless some way can be found to extend the assessment period for preparer penalties currently proposed." [51] The debtor also introduced a federal district court transcript from a hearing held on June 10, 1992 wherein the IRS and Hoyt read into the record an agreement reached between the parties whereby Hoyt consented to the extension of the statute of limitations for six months for the tax years 1987 though 1989, and the IRS agreed to forebear assessing any preparer penalties for those same years until the time a notice of FPAA was issued. [52]

The IRS introduced countervailing evidence to show that there was no quid pro quo between the IRS and Hoyt because the IRS did not accede to all of Hoyt's demands. The IRS introduced a meeting agenda written by Hoyt from a June 1, 1993 meeting, which listed several demands by Hoyt that the IRS representative testified were not met. [53] Additionally, the IRS introduced a letter dated December 18, 1991 that responded to Hoyt's fax of December 13, 1991 discussed above. [54] The December 18th letter informed Hoyt that the IRS would not agree to postpone preparer penalty considerations in exchange for extensions for the partnerships. With respect to the June 10, 1992 district court hearing referenced above in which the parties read their settlement onto the record, an IRS representative also testified that Hoyt's demands for forbearance of assessment on the preparer penalties were only granted because the IRS deemed them unimportant and was willing to give Hoyt something the IRS considered valueless in exchange for the partnership extensions. [55] The court finds that the value placed by the IRS on the forbearance of preparer penalties sought by Hoyt for what he thought was his personal benefit is not relevant. Hoyt clearly thought the forbearance was worth something, and

49. Exhibit IF.

50. *Id.*

51. Exhibit HG.

52. Exhibit GV. Transcript dated June 10, 1992, hearing before the Honorable Helen J. Frye, U.S. District Court for the District of Oregon at pp. 3–6.

53. Exhibit GY.

54. Exhibit IH.

55. Trial Transcript of October 19, 2006 at p. 54.

that he was willing to sign statute of limitations extensions for the partnerships in exchange for forbearance on the preparer penalty shows that in his mind, at least, he was letting his personal interests interfere with his fiduciary duty to the partnerships.

Third, the debtor introduced evidence that Hoyt was attempting to stall the IRS investigations and delay the issuance of the notices of FPAA, and that the IRS was concerned about issuing notices of FPAA without obtaining extensions of time in which to do so. An IRS memo dated August 26, 1990 detailed the concerns of an agent working on the Hoyt audit with the short statute of limitations remaining for the 1987 tax year with respect to the Hoyt partnerships.[56] Another memo dated September 10, 1991 stated that based on information given to the IRS by an accountant for some of the Hoyt investors who had contact with Hoyt, Hoyt intended to prolong the audit for as long as possible.[57] The memo further noted that despite having reached an agreement with Hoyt as to the provision of documents to the IRS, the IRS had still not received any of the documents. Another letter from the IRS to Hoyt dated July 14, 1993 shows that Hoyt had missed scheduled meetings with an auditor and not provided documents that Hoyt had been ordered to provide.[58] Additionally, Hoyt delayed the cattle count that the IRS sought to conduct in order to prove its allegations that Hoyt's partnerships did not own the number of cattle claimed in partnership tax returns. Hoyt's delays were such that the IRS had to sue in order to get him to comply. The June 10, 1992 district court hearing was part of this action. All of this along with testimony from the IRS agent involved in the Hoyt partnership audits tends to show a pattern of delay and non-cooperation by Hoyt.[59] The *River City Ranches # 1* court stated that delay constituted one example of the type of actions Hoyt was taking that was in his personal interest but against the interests of his partners.[60]

Taken separately, each of these categories of evidence allows the court to infer that Hoyt was not acting in the interests of his partners in granting the extensions or in his other dealings with the IRS in his capacity as TMP. Taken as a whole, the court finds that the debtor has shown a disabling conflict of interest that invalidates the extensions. Given the enormous scale of the fraud and deception being committed by Hoyt against his partners, it is difficult to imagine how the IRS can claim Hoyt was not breaching his duty as a fiduciary to those partners.

■ The IRS was not helpless in this situation. It had threatened to issue the notices of FPAA without waiting for documentation to bolster its claims of tax deficiencies by the partnerships, and it could have done so without requesting suspect extensions from Hoyt. Or, § 6231(c) could have been used to enact special rules to address this special enforcement situation. As the *Transpac* court noted:

> To the extent that "TMP-lessness" might present a burden, the Service is excellently positioned to minimize its costs.... The Secretary has authority to appoint new TMPs.... Alternatively, if the Secretary does not want to appoint new TMPs (or properly feels ill-

---

56. Exhibit HT.

57. Exhibit IC.

58. Exhibit HH.

59. *See e.g.* Trial Transcript of October 19, 2006 at pp. 161–62.

60. *See* quote from *River City Ranches # 1, supra* at p. 613.

positioned to do so on account of a conflict), he can send notice to the limited partners that the Service is removing the TMPs and, thereby, shift the duty to the partnerships to come up with their own replacements.[61]

The court finds that the IRS knew of the conflict between Hoyt and his partners when it asked for the statute of limitations extensions for the partnerships. Although the IRS may have had no duty to remove Hoyt as the TMP, by not doing so it took the risk that Hoyt was operating under a disabling conflict. This court finds that there was in fact a conflict-a serious conflict between Hoyt's personal relationship with the IRS and the fiduciary duty he owed as the TMP for the partnerships, and as a result, the extensions are invalid. Because the extensions are invalid, the court finds that the taxes for the tax years 1897 through 1989 are not properly assessable after the filing of the debtor's Chapter 7 petition and are therefore dischargeable.

## IV. Conclusion

For the reasons stated above, the debtor's taxes relating to the tax years 1987 through 1989 are declared dischargeable; the taxes for the tax years 1990 through 1993 are declared non-dischargeable.

**61.** *Transpac Drilling Venture v. CIR,* 147 F.3d 221, 228 (2nd Cir.1998).