T.C. Memo. 2007-119

UNITED STATES TAX COURT

DANIEL C. GREER AND WINNIE L. GREER, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21795-03.                    Filed May 10, 2007.


        Ps were investors in a purported tax shelter and
now dispute additions to tax related to R's
disallowance of losses and credits resulting from the
investment.

        Ps argue that they were not negligent because they
relied upon the broker selling the purported shelter
and because R did not inform Ps that the promoter of
the shelter was under investigation.  Ps further argue
that the amount of underpayment used to compute the
additions to tax should be reduced to reflect the
remittance paid by Ps before filing an action in the
Federal District Court, which remittance was later
ordered by the District Court to be returned to Ps.

<u>Held</u>: P-husband's actions regarding the partnership interest were negligent, and R was not required to advise Ps regarding R's investigation of the promoter. Therefore, the additions to tax under sec. 6653(a)(1) and (2), I.R.C., are sustained.

<u>Held</u>, <u>further</u>, the remittance which was repaid by R is excluded from R's computations of the addition to tax under sec. 6653(a)(2), I.R.C.

<u>Held further</u>, the addition to tax under sec. 6659, I.R.C., is sustained.

<u>Joy L. Hall</u>, <u>Martin J. Horwitz</u>, and <u>John A. Freeman</u>, for petitioner Daniel C. Greer

<u>Kenton Ball</u>, for petitioner Winnie L. Greer.

<u>Aubrey C. Brown</u> and <u>Denise A. Diloreto</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>: The issues in this case concern respondent's determinations that petitioners are liable for additions to tax under sections 6653(a)(1) and (2), and 6659[1] on the deficiencies in tax resulting from the disallowance of a partnership loss and related tax credits claimed on petitioners' 1982 joint Federal income tax return and carried back to petitioners' joint Federal income tax returns for 1979 through 1981. These tax benefits

---

[1]    Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

were claimed as a result of the unfortunate decision to participate in a purported tax shelter in late 1982 to offset dividend income petitioners received from a family-owned corporation.

Respondent determined the following additions to tax for petitioners' 1979, 1980, 1981, and 1982 tax years:

| Year | Sec. 6659 | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
|------|-----------|-----------------|-----------------|
| 1979 | $2,895.60 | $482.60 | [1] |
| 1980 | 6,239.40 | 1,039.90 | [1] |
| 1981 | 2,724.60 | 454.10 | [2] |
| 1982 | 14,412.90 | 2,404.75 | [2] |

[1] Respondent conceded the additional 50 percent interest.

[2] 50 percent additional interest

The partnership in question is subject to the provisions of the Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, and the treatment of partnership items was determined at the partnership level. The underlying deficiencies in income tax have been previously determined based upon the TEFRA partnership case Madison Recycling Associates v. Commissioner, T.C. Memo. 2001-85, affd. 295 F.3d 280 (2d Cir. 2002).

The parties agree that any request for relief from joint and several liability under section 6015 by petitioner wife should

not be determined in this case but should be determined separately.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein. Petitioners resided in Lexington, Kentucky, at the time they filed the petition in this case.

Petitioner husband received a bachelor of science degree in chemical engineering from the University of Kentucky in 1967. Petitioner wife graduated from Louisiana State University with a bachelor of arts degree in music in 1969. She also received a master's degree in music education from Marshall University in 1973. Petitioners were married in 1967.

Petitioner husband, referred to hereinafter as Mr. Greer, was employed in 1967 as a chemical engineer for Exxon Chemical Co. From 1969 until July 1993, Mr. Greer was employed by Ashland Oil Co., Inc., and its subsidiaries (AOI). From 1975 to 1980, Mr. Greer was a key assistant to the executive vice president of AOI. During that period, Mr. Greer participated in AOI's executive development program. He also attended a petroleum economics program at Northwestern University and took an accounting course for nonfinancial managers at Ohio State University. In 1982, Mr. Greer was an executive in the part of AOI's business characterized as Ashland Development. In that

year, petitioner wife was the sole proprietor of a photography business.

A.    G&L Sale and Madison Purchase

Mr. Greer was the president and chief executive officer of G&L Communications, Inc. (G&L), a family-owned cable television business which operated in Kentucky. G&L was incorporated in December 1979, and the assets of G&L were sold to a third party in November 1982. G&L was an S corporation. Petitioners were shareholders of G&L at the time the assets were sold and received dividends of approximately $250,000 on the sale. Prior to their dividends from G&L, petitioners had not held cash assets this large. This profit led Mr. Greer to seek advice from Hamilton Gregg & Co. (HG), an investment broker and securities dealer with a seat on the New York Stock Exchange. Mr. Greer had been introduced to HG through a program at a Holiday Inn in Southport, Ohio, in 1979. Other AOI executives also attended this program.

Mr. Greer's primary contact at HG was Ed Gallagher, and Mr. Greer met with Mr. Gallagher in late November 1982. Mr. Gallagher explained the tax consequences of the dividends and suggested purchasing municipal bonds or a limited partnership interest to reduce petitioners' tax liability for 1982. Shortly thereafter, Mr. Gallagher delivered a copy of the Offering Memorandum of Madison Recycling Associates (the offering memorandum) to Mr. Greer. This offering memorandum and the attachments were the only

documents Mr. Greer reviewed prior to purchasing an interest in Madison Recycling Associates (Madison). On December 16, 1982, Mr. Greer executed a check payable to Madison in the amount of $50,000. This check purchased a 5.5-percent limited partnership unit in Madison.

The offering memorandum sets forth warnings to potential purchasers, including Mr. Greer, of risks involved, informing these purchasers that "There is a substantial likelihood that the Service will audit the federal income tax returns filed by the partnership and each limited partner." Other warnings provided:

(a) This offering involves a high degree of risk. See certain business risks and tax risks and consequences;

(b) an investment in the partnership involves a high degree of risk and should only be considered by those who could afford to lose their cash investment and anticipated tax benefits;

(c) the draft legal opinion attached to the private offering memorandum was prepared for the general partner's use only and should not be relied upon by potential investors;

(d) prospective purchasers should not consider the contents of the offering memorandum or any other communications from the partnership or general partner as legal, tax, accounting, or other expert advice;

(e)  no representations, warranties, or assurances are made or should be inferred concerning the economic return or tax advantages which may accrue to the limited partners;

(f)  prospective purchasers, before investing, should consult with their own professional advisors as to legal, tax, business, accounting, and other matters relating to an investment in the partnership;

(g)  investment in Madison should be considered only by persons having substantial net worth and substantial present and anticipated income; and

(h)  prospective purchasers will be afforded an opportunity to obtain all additional information they may reasonably request relating to the offering, Mr. Roberts, or any documents attached to the offering memorandum.

In addition, the offering memorandum warns that Madison is a tax shelter by stating to potential purchasers, including Mr. Greer, that "On audit, the purchase price of the Sentinel EPS Recyclers to be paid by F & G to ECI may be challenged by the Service as being in excess of the fair market value thereof, a practice followed by it in transactions it deems to be 'tax shelters'." The offering memorandum advises that Madison "is a newly-formed

entity with no operating history and is subject to all the risks inherent in starting a new business."

The offering memorandum further advises that

> management of [Madison's] business will be dependent upon the services of [Mr. Roberts] who has had limited experience in marketing recycling or similar equipment and who is required by the Partnership Agreement to devote only such time to the affairs of [Madison] as he, in his absolute discretion, deems necessary

and that Mr. Roberts had other business commitments that would require a substantial portion of his time and efforts. The Madison limited partners, including Mr. Greer, had no control over the conduct of Madison's business. The offering memorandum explains that a Sentinel EPS Recycler has "no history of commercial use, there is no established market for its sale, lease or license, and there can be no assurance that PI (Packing Industries Group, Inc.) will meet its obligations under the aforementioned warranties." The offering memorandum also points out risks that the recycled resin pellets may not be marketable and that the price would fluctuate.

The offering memorandum also states that Mr. Roberts, the general partner of Madison, may have a potential conflict of interest with the limited partners of Madison because Mr. Roberts is not prohibited from engaging in activities that compete with Madison and that he is a general partner in other partnerships

buying, leasing, and licensing the same Sentinel EPS Recyclers and/or other recycling equipment.  With respect to this potential conflict of interest, the offering memorandum provides:

> The existence of such other limited partnerships may create conflicts and result in actions taken by, or omitted to be taken by, (Mr. Roberts) which may be adverse to the interest of the Limited Partners. Furthermore, PI, ECI, F&G, RRI, some of the shareholders of F&G, ECI, and RRI, are, and may again become, engaged in the business of buying, selling, leasing, licensing the use of and/or operating recycling equipment, including other Sentinel EPS Recyclers and other recycling equipment similar in design and function, or rendering consulting services with respect thereto.

Before he invested in Madison, Mr. Greer expected that Madison was going to provide a tax savings of approximately $1.75 for each dollar invested.  The offering memorandum sets forth the 1982 tax benefits/savings of an investment in Madison as follows:

| Projected Regular Investment | Projected Tax Payment Energy Tax Credits | Deductions |
|---|---|---|
| $50,000 | $77,000 | $38,610 |

Included as part of the offering memorandum package was the legal opinion, an undated "form of opinion" letter (form of opinion), which was based on facts supplied by Madison's general partner.  The form of opinion stated:  "This letter is intended for your [the general partner's] own individual guidance and for the purpose of assisting prospective purchasers and their tax advisors in making their own analysis, and no prospective

purchaser is entitled to rely upon this letter."  In the discussion of the tax savings and consequences relating to an investment in Madison, the offering memorandum further provides:

> Prospective purchasers are expected to consult with their own professional tax advisers regarding such tax risks and the contents of the proposed form of opinion of counsel included as Appendix E hereto (the "Opinion of Counsel").  Since the Opinion of Counsel will be provided to the General Partner for his individual guidance, prospective purchasers are not permitted to rely upon the advice contained therein.
>
> PROSPECTIVE PURCHASERS MUST RELY UPON THEIR OWN PROFESSIONAL ADVISERS WITH RESPECT TO THE TAX BENEFITS AND TAX RISKS RELATING TO AN INVESTMENT IN THE PARTNERSHIP. [Capitalized in the original.]

The offering memorandum also provides:

> The [partnership] Units are being offered through * * * [HGSC] as Placement Agent on a best efforts basis. * * * [HGSC] will be paid a selling commission equal to 10% of the per Unit offering price for each Unit sold.  This selling commission may also be paid to other qualified broker-dealers as selling agents for each Unit sold by them.

The Madison partnership agreement designated Mr. Roberts, the general partner, as the tax matters partner for the partnership and granted Mr. Roberts a power of attorney authorizing him to conduct all activities necessary to carry out the provisions of the partnership agreement.

In addition to reading the offering memorandum, Mr. Greer discussed the Madison partnership with some of his coworkers at AOI who also participated in Madison.

Mr. Greer showed the offering memorandum to his tax return preparer and tax adviser to confirm the tax computations Madison represented would result from his investment prior to purchasing a limited partnership unit. The tax adviser and return preparer Mr. Greer contacted was John Artis, a certified public accountant with the accounting firm of Smith, Goolsby, Artis, & Reams in Ashland, Kentucky (the accounting firm). The accounting firm had prepared petitioners' income tax returns for approximately 10 years before 1982. Mr. Artis did not read the entire offering memorandum, but based upon his conversations with Mr. Greer, he understood that the tax benefits associated with the Madison interest exceeded the dollars invested. Because of this understanding, Mr. Artis told Mr. Greer that Madison was "fairly aggressive" from a tax standpoint. Mr. Artis was not asked by Mr. Greer to provide a written tax opinion about the merits of the tax treatment represented in the Madison offering memorandum; rather, Mr. Greer asked him to confirm the amount of the tax benefits petitioners would claim on their tax return for 1982, if Mr. Greer purchased the limited partnership interest. Mr. Artis told Mr. Greer the result on the 1982 return he computed would be in accord with the benefits Mr. Greer expected.

Petitioners' capital contribution was limited to their $50,000 investment in Madison because Mr. Greer purchased a 5.5-percent limited partnership unit in Madison that was not subject

to further assessment, and as a limited partner, Mr. Greer was not personally liable for the debts, obligations, or losses in Madison in excess of his $50,000 capital contribution.

B.   The Underlying Madison Transaction

The Madison promotion involved the following simultaneous transactions:

(1)  On or about December 31, 1982, PI sold four Sentinel EPS Recyclers to Ethynol Cogeneration, Inc. (ECI), for $1,520,000 each or a total of $6,080,000.

(2)  The consideration of $6,080,000 provided by ECI consisted of cash in the amount of $481,000 and a 12-year nonrecourse note in the amount of $5,599,000, which was secured by a first lien on the four recyclers.

(3)  ECI sold the four recyclers to F&G Equipment Corp. (F&G) for $7 million or $1.75 million each.

(4)  The consideration provided by F&G consisted of cash in the amount of $553,000 and a 12-year note in the amount of $6,447,000, of which 80 percent was nonrecourse.  The nonrecourse portion of the note was senior to the recourse portion.  The note was secured by a second lien on the four recyclers.

(5)  F&G agreed to lease the four recyclers to Madison.  The lease agreement terminated in 9-1/2 years and required an annual lease payment of $960,000, or $80,000 per month.

(6) Madison simultaneously entered into a joint venture agreement with PI and Resin Recyclers, Inc. (RRI), to "exploit" the recyclers and place them with end-users.

(7) Under the joint venture agreement, Madison received a fixed monthly "joint venture fee" of $80,000, which is equal to the monthly lease payment made to F&G. The joint venture fee was to commence 9 months after the joint venture agreement closed.

(8) After the transactions were completed, the four recyclers were owned by F&G.

C. Madison Subscription Agreement

Mr. Greer signed a completed, notarized Madison Subscription Agreement and Purchaser Suitability Representations (Madison subscription agreement), required for purchasing a limited partnership interest in Madison during 1982. At the time Mr. Greer executed the Madison subscription agreement, he did not meet the net worth suitability (net worth exceeds $1 million) for purchasing an interest in Madison. Mr. Greer submitted his subscription agreement to purchase an interest in Madison using another option, in which he acknowledged that he did not meet either the net worth or annual net income suitability test to purchase an interest in Madison but represented and warranted that he had sufficient business knowledge and financial knowledge, and

was capable of evaluating the risks and merits of investing in Madison.

D.   TEFRA Case

Mr. Greer was notified by the District Director of the Internal Revenue Service (IRS) in New York City that an examination of Madison's partnership income tax return for 1982 had commenced by a letter sent on January 23, 1985.  On December 24, 1987, the same District Director issued a Notice of Final Partnership Administrative Adjustment for 1982 (FPAA) to Richard Roberts, the Madison tax matters partner.  Petitioners were sent a copy of the FPAA on February 16, 1988.  Following the issuance of the FPAA, as the result of a petition filed on May 17, 1988, petitioners became parties with other Madison partners in a docketed case in this Court (docket No. 10601-88) under the TEFRA provisions challenging the determinations made in the FPAA. Over the next 13 years the following occurred:  The denial of the partners' motion for summary judgment pursuant to Madison Recycling Associates v. Commissioner, T.C. Memo. 1992-605, a concession by the partners regarding the adjustments in the FPAA, and an opinion, Madison Recycling Associates v. Commissioner, T.C. Memo. 2001-85, finding that the FPAA was timely, which was affirmed by Madison Recycling Associates v. Commissioner, 295 F.3d 280 (2d Cir. 2002).  The result is that no dispute as to the partnership adjustments in the FPAA for 1982 remains.

E.  District Court Case

In December 1992, after this Court had denied the partners' motion for summary judgment, petitioners had mailed in one package to respondent's IRS Service Center in Cincinnati, Ohio, Forms 1040X, Amended U.S. Individual Income Tax Return, for 1982 and the carryback years 1979 through 1981.  One set of Forms 1040X reported additional tax and interest and included a check in the amount of $189,769.  A second set of Forms 1040X bore the legend "PROTECTIVE CLAIM" and sought refunds of the entire amount paid in the check.  In August 1993, Mr. Greer filed a complaint in the United States District Court for the Eastern District of Kentucky, naming the United States as a defendant.  Mr. Greer's complaint was designated civil case No. 93-CV-194-HRW in the District Court and was assigned to District Court Judge Henry Wilhoit.  Mr. Greer's complaint sought the refund of the $189,769, plus interest, and alleged as one of the jurisdictional grounds section 6226.  The United States in seeking to dismiss Mr. Greer's complaint asserted that no assessment of the $189,769 was permitted under section 6225(a)(2).

On September 21, 1994, the District Court entered the following order (the Order):

> This matter is before the Court on defendant's motion to dismiss plaintiff's complaint based on lack of subject matter jurisdiction.  Defendant's motion to dismiss, although subsequent in time to plaintiff's motion for partial summary judgment, logically precedes a summary judgment motion on the merits.

Defendant claims in its motion that this Court is without subject matter jurisdiction over plaintiff's tax refund action as dictated by applicable tax statutes. Although the Court does not concede to the absence of subject matter jurisdiction under 28 U.S.C. § 1346, it feels it is appropriate to dismiss the action without prejudice, subject to the plaintiff's right to refile pending the outcome of related tax court litigation, now awaiting resolution in excess of six years.

**IT IS THEREFORE ORDERED AND ADJUDGED:**

(1) that defendant's motion to dismiss is **SUSTAINED**,

(2) that the plaintiff's complaint is **DISMISSED** without prejudice,

(3) that the defendant repay the plaintiff the amount of tax deficiency paid by the plaintiff as a prerequisite to the filing of this action, plus interest,

(4) that plaintiff's motion for summary judgement is **OVERRULED** as **MOOT**.

(Emphasis in the original.)

The District Court subsequently overruled the plaintiff's motion to set aside the Order and defendant's motion to alter or amend the Order. Petitioners were repaid the $189,769, plus interest, in early June 1995, after plaintiff's counsel brought defendant's failure to repay to Judge Wilhoit's attention.

F.   The Present Case

After respondent issued notices of deficiency to petitioners for 1979 through 1982, petitioners timely filed a petition in this Court in December 2003, contesting the additions to tax and other items since conceded by petitioners.

OPINION

Our task is to determine the applicability of additions to tax.  Petitioners have the burden of proof.  Because a remittance petitioners made in December 1992 was repaid by Order of the District Court of the Eastern District of Kentucky, there is a related issue concerning the amounts of the deficiencies in income tax to which the addition to tax under section 6653(a)(2) would apply, if we determine that additions to tax under section 6653(a)(1) and (2) should apply at all.

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment of tax is due to negligence or intentional disregard of rules or regulations.  An additional amount is added under section 6653(a)(2), equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence.

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances.  Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299.  The reasonableness of a particular taxpayer's actions is viewed in light of the taxpayer's experience, the nature of the investment, and the taxpayer's actions regarding the transaction.  Henry Schwartz Corp. v.

Commissioner, 60 T.C. 728, 740 (1973).  The taxpayer's reliance upon a qualified adviser is also a factor, and the specific expertise of the adviser is considered.  Patin v. Commissioner, 88 T.C. 1086, 1130-1131 (1987), affd. sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v.  Commissioner, 868 F.2d. 865 (6th Cir. 1989).

Mr. Greer had no prior experience in the recycling business. He relied upon the purported value of the Sentinal EPS Recyclers set forth in the offering memorandum.  He made no attempt to verify the value of the recyclers.  Given the nature of the tax benefits claimed, this omission supports respondent's assertion of negligence.  Rybak v. Commissioner, 91 T.C. 524, 565 (1988).  Mr. Greer contacted his longstanding tax accountant, and the accountant warned Mr. Greer that the transaction was fairly aggressive.  Rather than seek a written opinion from his accountant on the validity of the tax benefits, Mr. Greer relied upon HG, the investment brokerage firm that brought him the transaction.  Obviously, the brokerage firm received a commission. In addition, the individuals at HG who sold the Madison transaction to Mr. Greer did not have specialized tax expertise.

Mr. Greer asserts that HG came recommended by his employer. Regardless, Mr. Greer's business experience prior to 1982 was such

that he should have understood HG's motivation in suggesting the transaction to him.  In addition, the offering memorandum made clear the commissions that would be paid to HG, thus indicating their interest in selling the Madison transaction.  Mr. Greer was also astute enough to know the difference between a sales broker and a tax expert.

Petitioners also argue that they should be relieved of the additions to tax because respondent failed to advise them that Mr. Roberts was under investigation in late 1982 and 1983.  Petitioners admit this is a novel argument.  We find no support for this legal position, and we note that Mr. Greer read a news article in August 1983 which explained that Mr. Roberts had agreed to a settlement with the Department of Justice "in federal court" which imposed upon him reporting requirements that restricted his actions in selling recycling tax promotions.  Mr. Greer took no remedial actions after learning of the questionable nature of Mr. Roberts's tax shelter strategy; rather he purportedly relied upon vague assurances from HG personnel.

The record establishes that Mr. Greer aggressively sought to reduce the 1982 tax liability through Madison and consulted with his tax return preparer about the transaction to verify the tax benefits, not to obtain an independent opinion on the merits of the tax scheme.  Given that the expected tax refunds were 175 percent of the dollars invested, Mr. Greer's rush to invest in

Madison was certainly not prudent, and his failure to obtain expert tax advice regarding the merits of the tax scheme was negligent.  Accordingly, the additions to tax under section 6653 are sustained.  See Barlow v. Commissioner, 301 F.3d 714, 724 (6th Cir. 2002), affg. T.C. Memo. 2000-339.

Anticipating the potential application of section 6653(a)(2), petitioners assert that respondent has incorrectly computed the underpayment of tax which is attributable to negligence and subject to the addition to tax, based upon 50 percent of the interest payable under section 6601.  Petitioners argue to reduce the deficiencies in 1981 and 1982 computed under section 6211(a)(1), despite respondent's repayment of the $189,769 with interest.

Petitioners rely upon the definition of deficiency in section 6211 and argue they made a payment which should be characterized as an amount collected without assessment as a deficiency under section 6211(a)(1)(B).  They further argue this amount should not be reduced by the subsequent repayment because that repayment was not a rebate under section 6211(a)(2).

There is a body of law holding that the deficiency procedures may not be used to correct amounts collected and then erroneously refunded because such erroneous payments are not rebates.  See, e.g., O'Bryant v. United States, 49 F.3d 340 (7th Cir. 1995).  In addition, amounts characterized as payments of tax are not

generally treated as deposits. <u>Blatt v. United States</u>, 34 F.3d 252 (4th Cir. 1994).

Petitioners focus on how the payment was treated administratively by respondent and how it was initially represented by petitioners, but petitioners fail to overcome a fundamental point. Section 6225(a) provides that once a proceeding in the Tax Court under section 6226 has commenced, no assessment of a deficiency attributable to any partnership item may be made before the proceeding in the Tax Court has become final. Section 6226(e)(1) specifically requires that a partner may file a readjustment petition in the District Court under section 6226 only if that partner "deposits" the TEFRA partnership-related tax liability. As previously stated, Mr. Greer asserted section 6226 as one of the jurisdictional grounds for his petition in the Federal District Court for the Eastern District of Kentucky. As a result, we find petitioners' argument that the remittance in question is an amount collected to be inconsistent with petitioners' efforts to obtain section 6226(e) jurisdiction in District Court, regardless of how respondent may have initially characterized the payment.

It is clear from the record in the District Court that Mr. Greer's counsel sought the repayment. If this repayment was not the return of a deposit, then it was nevertheless not an erroneous refund as that term is described in cases such as <u>O'Bryant v.</u>

United States, supra.  The District Court ordered the repayment, and petitioners had not waived the restrictions on assessment which arose when the partnership action was filed in the Tax Court.  The District Court specifically noted in the Order that the amount petitioners had paid was a prerequisite to filing the action in District Court.  The District Court also ordered the repayment to include interest, thus putting petitioners in the position they were in before filing the amended returns and protective claims, which meant the petitioners remained liable for the entire potential deficiencies and penalties that could result from the Tax Court partnership case and this current matter.

Respondent's representative in the District Court action asserted the remittance made by petitioners could not be assessed at that time, and we agree.  We do not find the remittance was an unassessed amount collected as a deficiency.

In conclusion, we hold that respondent has correctly computed the amount of the underpayment of tax related to the section 6653(a)(2) addition to tax.

The remaining issue is the addition to tax under section 6659 for a valuation overstatement of at least 150 percent of the amount determined to be correct on any return.  Section 6659 has since been repealed but was applicable at the time the partnership return was filed.  The addition to tax has previously been held to be applicable to carryback years before its enactment.  See

Nielsen v. Commissioner, 87 T.C. 779 (1986).  Therefore, if the addition to tax is appropriate, it would apply to all the years before us.  Here, respondent asserts an overstatement exceeding 250 percent of the value of the four Sentinel EPS Recyclers on the partnership return.  Petitioners do not contest the value was overstated as respondent asserts, but petitioners maintain that the adjustment in question was not specifically tied to the value of the recyclers.  Nevertheless, the FPAA notes the disallowance of $7 million in investment tax credit property and $7 million in business energy investment credit property.  Ultimately, these adjustments were sustained.  Petitioners understandably make no attempt to offer a reasonable basis for the value claimed on the partnership return under section 6659(e).  Given these circumstances, we reject petitioners' argument and sustain the addition to tax under section 6659 as determined by respondent.

To reflect the foregoing and concessions by the parties,

Decision will be entered

under Rule 155.