T.C. Memo. 2009-20

UNITED STATES TAX COURT

WINNIE L. GREER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24062-06.                    Filed January 29, 2009.

<u>Kenton L. Ball</u>, for petitioner.

<u>Denise A. Diloreto</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:   The issue for decision is whether to uphold
respondent's determination that petitioner is not entitled to

relief under section 6015(b)[1] or (f) for 1979, 1980, 1981, and 1982.  For the reasons explained herein, we uphold respondent's determination.

FINDINGS OF FACT

At the time the petition was filed, petitioner resided in Kentucky.

Petitioner graduated from high school in Floyd County, Kentucky, in 1965.  She then attended the University of Kentucky, for 2 years and transferred to Louisiana State University from where she graduated with a bachelor of arts degree in music in 1969.  Petitioner also received a master's degree in music education from Marshall University in 1973.  Petitioner did not pursue studies in economics, finance, or accounting in her formal education.

Petitioner married Daniel C. Greer in 1967, and they remain married.  Petitioner and Mr. Greer have two daughters, born in 1974 and in 1977.  Mr. Greer is a licensed chemical engineer and was employed by Ashland Oil Co., Inc., from 1969 through July 1993.

From September 1969 through May 1972 petitioner was employed as a high school music teacher.  After that she pursued graduate studies and raised her daughters.  From 1975 to 1985 she acted as

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code.

a part-time choir director at the Episcopal church where she and Mr. Greer became members sometime in 1982 and 1983.

In 1979 petitioner began a photography business. She specialized in wedding and portrait photography. She opened her first photography studio in late 1979 in the family home. Improvements were made to the home in 1982, and the structure remained petitioner's photography studio even after petitioner and her family moved their residence in 1986.

Throughout the years of her marriage up to and including the years in issue, petitioner relied upon Mr. Greer to manage their financial affairs. Mr. Greer did not conceal any financial activities from petitioner or mislead her with respect to those activities. However, he was the primary decisionmaker, and she relied upon him to direct their investments and make decisions regarding their finances and taxes.

In 1979 Mr. Greer and petitioner's father founded G&L Communications, Inc. (G&L), a closely held cable television business that operated in Boyd and Greenup Counties of Kentucky. G&L was taxed as an S corporation until the sale of its assets in November 1982. Petitioner and Mr. Greer each owned 61 shares of G&L stock. Petitioner was not active in G&L's management, nor was she an employee of G&L. In 1982 petitioner and Mr. Greer each continued to own 61 shares. They each received a cash distribution of $146,918.02 attributable to their respective

portions of the proceeds of the sale. Thus their combined distribution from G&L was $293,836. Following the sale of G&L's assets in 1982, two identical Forms 1099-DIV, Statement For Receipts of Dividends and Distributions, were issued to petitioner and Mr. Greer, each reflecting a dividend distribution of $35,976, a capital gain distribution of $82,072, and a nontaxable distribution of $28,869 for a total distribution to each of $146,917.

Motivated by the anticipated income tax consequences of the G&L dividends and distributions, Mr. Greer invested in Madison Recycling Associates, Inc. (Madison). The background of this transaction and its consequences are fully described in previous judicial opinions, Greer v. Commissioner, T.C. Memo. 2007-119, Madison Recycling Associates v. Commissioner, 295 F.3d 280 (2d Cir. 2002), affg. T.C. Memo. 2001-85, and Madison Recycling Associates v. Commissioner, T.C. Memo. 1992-605. We simply note here that the result of those opinions is that respondent has assessed joint deficiencies in income tax and additions to tax against petitioner and Mr. Greer for the years 1979 through 1982. These deficiencies and additions to tax are the liabilities from which petitioner seeks section 6015 relief. The parties previously agreed that any request by petitioner for relief from joint and several liability under section 6015 would not be

determined in the most recent Tax Court litigation reflected in Greer v. Commissioner, supra.

The 1982 joint income tax return for petitioner and Mr. Greer was prepared by John W. Artis, C.P.A. Mr. Artis advised Mr. Greer that because the tax benefits associated with Madison significantly exceeded the dollars invested, the Madison investment was "fairly aggressive". Petitioner was not a party to those discussions and relied totally on Mr. Greer to make the decision to claim the tax benefits associated with Madison. Mr. Greer chose not to seek an opinion from Mr. Artis regarding the merits of the Madison transaction. In Greer v. Commissioner, supra, we found as fact that Mr. Greer expected that Madison would provide tax savings of approximately $1.75 for each dollar invested, and the record in this case is consistent with that finding.

On December 16, 1982, Mr. Greer signed a check for $50,000 payable to Madison and drawn on the joint checking account of petitioner and Mr. Greer to purchase a 5.5-percent limited partnership interest in Madison. This was the only checking account that petitioner and Mr. Greer had at the time. At the time of the Madison investment, petitioner knew Mr. Greer was purchasing an interest in Madison, and they briefly discussed the Madison transaction before the investment.

In March 1983 Madison filed a partnership return for the taxable year ended December 31, 1982, which reported a loss of $704,111 and a tax credit basis of $7 million. Petitioner and Mr. Greer filed joint individual income tax returns for the years 1979, 1980, 1981, and 1982. The Madison-related pass-through losses and investment credits reported on the joint returns for 1979, 1980, 1981, and 1982 were as follows:

| Year | Loss | Investment Credit |
|------|------|-------------------|
| 1979 | -0- | $177.28 |
| 1980 | $9,808 | 7,153.00 |
| 1981 | 3,146 | 4,128.00 |
| 1982 | 38,726 | 51,131.00 |

Of the $51,131 credit reported on the 1982 joint Federal income tax return, the net credit used in 1982 from Madison totaled $33,066 because $22,012 was eliminated in the alternative minimum tax computation, and only an additional $3,947 was allowed as a credit against alternative minimum tax. As a result, credits were available to be carried back to 1979, 1980, and 1981.

The distributions from G&L were reported on the 1982 joint return. Reflecting the listed ownership of 61 shares by each, the dividends and capital gain distributions reflected on the Federal income tax return were divided equally between Mr. Greer and petitioner on two separate Forms 740, Kentucky Individual Income Tax Return, which were filed using the status married filing separately. Petitioner signed both the Federal joint income tax return and her separate Kentucky form 740 for 1982.

On February 28, 1983, petitioner and Mr. Greer signed a Form 1045, Application for Tentative Refund, for the years 1979, 1980, and 1981, seeking a refund totaling $39,534 as a result of carrying back to those years the credits from the Madison investment. Subsequently in August 1983 petitioner also signed a declaration relating to the Form 1045, which was requested by the Internal Revenue Service to confirm the execution of the original Form 1045. Petitioner discussed the execution of this declaration with Mr. Greer. In October 1983 three refund checks related to the Form 1045 were deposited into the joint account of petitioner and Mr. Greer. The total deposit resulting from these checks was $39,532. There is no explanation in the record for the discrepancy of $2 between this amount and the amount claimed on the Form 1045. Petitioner did not review the 1982 joint Federal income tax return, nor did she review the Form 1045. Petitioner did not ask Mr. Greer for details about the Madison investment, and she did not ask Mr. Greer or Mr. Artis any questions about the 1982 joint Federal income tax return or the Form 1045. However, petitioner was aware of the Madison investment.

Petitioner made an election for relief under section 6015 from liability for the deficiencies, additions to tax, and interest determined against her for 1979 to 1982 in a Form 8857, Request for Innocent Spouse Relief, submitted to respondent in

September 2005. Petitioner's grounds for relief were that the erroneous items at issue are those of Mr. Greer, that he handled the family finances and was responsible for having the returns prepared, that she did not review the returns before signing them, and that she relied upon Mr. Greer to have the returns prepared correctly. Petitioner provided no information regarding her current income or living expenses. In late 2005 respondent issued a preliminary determination denying petitioner's request for relief on the basis that petitioner was aware of the items on the joint Federal income tax returns that led to the deficiencies in question. Petitioner protested this preliminary determination.

Petitioner's request for relief was then considered by an Appeals officer, who determined after conducting an investigation that petitioner was not entitled to relief because the factors against relief outweighed the factors for relief. The Appeals officer found that the factors against relief included that petitioner knew or had reason to know of the understatement of tax. The Appeals officer determined that petitioner should have made a further inquiry concerning the tax liability, which may have been generated by the Madison transaction. The Appeals officer also determined that petitioner received benefit from the tax which was not paid because of the Madison transaction, inferring that the success of petitioner's photography business

was tied to the building of the photography studio on a tract of land she purchased in 1983 and that an increase in net worth of petitioner and Mr. Greer was caused by not paying the tax liabilities for the years in question. Finally, the Appeals officer determined that there would not be economic hardship to petitioner and Mr. Greer as a result of the payment of the underlying tax liabilities if Mr. Greer's assets were considered as a source of payment, as well as petitioner's assets. The Appeals officer also determined that petitioner was in compliance with the tax laws and that this was a favorable factor for petitioner.

The Appeals officer estimated that petitioner and Mr. Greer owned assets which provided a reasonable collection potential to respondent of $2,262,749. The Appeals officer estimated the Mr. Greer's assets totaled approximately $925,000 and petitioner owned the remainder. The parties have stipulated that petitioner's personal assets at the end of September 2007 had a value in excess of $2,134,000. Petitioner averaged over $42,000 in annual wages from Greer Photography during 2004 through 2006.

The deficiencies in tax, additions to tax, and interest for the years 1979 through 1982 associated with the joint income tax liabilities of petitioner and Mr. Greer exceed $1.2 million at

this time, largely because of the interest for all 4 years and the 50-percent additional interest under section 6653(a)(2) for 1981 and 1982.

After receipt of the notice of determination reflecting the Appeals officer's negative conclusions, petitioner filed a timely petition.

OPINION

In general, taxpayers filing joint Federal income tax returns are each responsible for the accuracy of their returns and are jointly and severally liable for the entire tax liability for the year of the returns. Sec. 6013(d)(3). In certain circumstances, however, a spouse may obtain relief from joint and several liability by satisfying the requirements of section 6015.

Section 6015(a)(1) provides that a spouse who made a joint return may elect to seek relief from joint and several liability under section 6015(b) (dealing with relief from liability for an understatement of tax on a joint return). Section 6015(c) is not available to petitioner on the facts of this case. If relief is not available under section 6015 (b) or (c), an individual may seek equitable relief under section 6015(f).

I.    Section 6015(b)

Section 6015(b) provides that a taxpayer will be relieved of liability for an understatement of tax if (1) a joint return was filed for the taxable year in question; (2) there is an

understatement of tax attributable to erroneous items of Mr. Greer; (3) the taxpayer requesting relief "did not know, and had no reason to know, that there was such understatement" when he or she signed the return; (4) taking into account all of the facts and circumstances, it would be inequitable to hold the taxpayer liable for the deficiency attributable to such understatement; and (5) the taxpayer elects to have section 6015(b) apply within 2 years of the initial collection action. Respondent agrees that petitioner meets the first and fifth requirements and thus focuses on the second, third, and fourth factors as the basis for supporting the determination to deny relief. The burden is on petitioner to establish that she is entitled to the relief.

This case does not involve a deficiency stemming from an omission of an item of income on a tax return. Rather, the deficiency arises from the disallowance of investment credits and a partnership loss. In such situations a taxpayer may be aware that a transaction took place but may not know that an understatement will result from the transaction. Knowledge of the transaction has been held to be sufficient knowledge of the understatement to bar relief under former section 6013(e)(1)(C), which had a similar requirement to that of section 6015(b)(1)(C). See, e.g., Bokum v. Commissioner, 94 T.C. 126, 146 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). The Court of Appeals for the Ninth Circuit held that a taxpayer meets the standard for relief

if the taxpayer did not know or did not have reason to know that the erroneous deduction or credit would give rise to an understatement despite the presence of the deduction on the return.  Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989).  Because of the similarity between the two statutory standards, we have held that the cases interpreting former section 6013(e) remain instructive in analyzing the issue presented by section 6015(b)(1)(C).  Jonson v. Commissioner, 118 T.C. 106, 115 (2002) (citing Butler v. Commissioner, 114 T.C. 276, 283 (2000)), affd. 353 F.3d 1181 (10th Cir. 2003); Doyel v. Commissioner, T.C. Memo. 2004-35.

The Court of Appeals for the Sixth Circuit is the likely venue for any appeal of this case.  In Purcell v. Commissioner, 826 F.2d 470, 473-474 (6th Cir. 1987), affg. 86 T.C. 228 (1986), that Court of Appeals held that knowledge of the transaction giving rise to omitted income was sufficient to bar relief under former section 6013(e).  In Richardson v. Commissioner, 509 F.3d 736 (6th Cir. 2007), affg. T.C. Memo. 2006-69, that Court of Appeals followed Purcell in a case where the taxpayer sought relief under section 6015(b) from a tax deficiency arising from the use of alleged trusts to shield income.  The trusts in question were held to be a sham.

Petitioner notes that the Court of Appeals for the Sixth Circuit has embraced a test requiring the examination of all facts and circumstances, citing Shea v. Commissioner, 780 F.2d 561 (6th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-310. Shea involved omissions of income and an analysis of the facts and circumstances to determine whether a person had reason to know of the omissions. We find that under the facts and circumstances of this case petitioner had reason to know of the understatement on the joint income tax return for 1982.

II. Reason To Know

In Shea, the Court of Appeals for the Sixth Circuit adopted the description of the "reason to know" test used in Sanders v. United States, 509 F.2d 162, 166 (5th Cir. 1975). Shea v. Commissioner, supra at 565-566, has the following explanation:

> The test adopted by the Sanders court is the same test advanced by Restatement (Second) of Agency § 9, comment d (1958), which read as follows:
>
> > A person has reason to know of a fact if he had information from which a person of ordinary intelligence which such person may have, or of the superior intelligence which such person may have, would infer that the fact in question exists or that there is such a substantial chance of its existence that, in exercising reasonable care with reference to the matter in question, his action would be predicated upon the assumption of its possible existence.
>
> 509 F.2d at 167. By adopting this reasonable person standard, the court rejected a more restrictive interpretation which would have required the taxpayer to provide that there was no possibility of discovering the omissions. Id. at 166. The primary ingredient of

the "reason to know" tests are (1) the circumstances which face the petitioner, and (2) whether a reasonable person in the same position would infer that omissions or erroneous deductions had been made.

The "reason to know" test is also explained in Price v. Commissioner, supra at 965:

A spouse has "reason to know" of the substantial understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement. Factors to consider in analyzing whether the alleged innocent spouse had "reason to know" of the substantial understatement include: (1) the spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. [Citations omitted.]

In reviewing whether petitioner had reason to know of the understatement, we will begin with the four factors listed in Price.

(i)  Education

Petitioner is highly educated, having received a master's degree in music education. She is not specifically educated in accounting, economics, or finance, but she is an intelligent, well-educated person.

(ii)  Involvement in Financial Affairs

Petitioner's ownership of 61 shares of G&L stock led to a cash distribution to her of approximately $147,000 in 1982. Petitioner argues that she held the shares only as a nominee for

Mr. Greer. Regardless, petitioner was aware of the significant cash distributions that both she and Mr. Greer received as a result of the sale of G&L's assets. Petitioner also signed a Kentucky income tax return which reflected her separate share of the proceeds from the sale of G&L's assets. In addition, she signed forms seeking significant tax refunds, which resulted from the tax reporting of the Madison investment. Finally, the investment in the Madison transaction was paid from the joint checking account of petitioner and Mr. Greer. Petitioner does not maintain that she was unaware of the investment, only that she did not realize the reporting of the Madison transaction would result in an understatement of tax. Regarding the large G&L distributions which were the key to the motivation of Mr. Greer in making the Madison investment, petitioner was likewise not in the dark. She maintains that she always relied on Mr. Greer to handle financial affairs, but she was at least generally aware of the results of the G&L sale. Such knowledge is not irrelevant. Price v. Commissioner, supra at 963 n.9; Doyel v. Commissioner, T.C. Memo. 2004-35.

(iii) Changes in Standard of Living

The parties have argued in great detail about whether petitioner directly benefited from the reported tax treatment of the Madison investment. While a specific dollar benefit to petitioner personally is not clearly established, there is no

question that petitioner and Mr. Greer maintained a very comfortable lifestyle during 1982 and for all the years thereafter and that they provided for the education of their two children. Cash is fungible, and the reporting of the Madison transaction generated significant cash savings on the joint tax liability of petitioner and Mr. Greer for 1979 through 1982. The record does not establish any extravagant change in petitioner's lifestyle, however.

(iv) <u>Mr. Greer's Evasiveness and Deceit Regarding Finance</u>

Mr. Greer was not deceitful or evasive with petitioner regarding the Madison investment or the G&L cash distributions. Petitioner relied upon Mr. Greer to make the decisions concerning the family financial transactions and their tax consequences, but the record does not support the conclusion that she was misled or denied information.

III. <u>Did Petitioner Have "Reason To Know"</u>?

Three of the four <u>Price</u> factors would support the conclusion that petitioner should have at least made further inquiry about the extraordinary tax benefits reflected on the joint return for 1982. She knew there was substantial additional income, yet she signed forms reflecting tax refunds generated in the years 1979 through 1981 as a result of the reporting of the 1982 Madison investment. Almost $40,000 in refunds was deposited into the same joint checking account on which the check of $50,000 for the

Madison investment was drawn. These refunds were in addition to tax savings of over $33,000 sought through the aggressive reporting of the Madison transaction on the joint return for 1982. Petitioner chose not to know; she was not deceived or misled.

> [B]eing a homemaker and preparing for weddings, graduations and reunions certainly cannot relieve a taxpayer of joint and several tax liability. The petitioner does not make a showing that Mr. Greer's financial affairs were unreasonably complex, nor does she provide the court with convincing reasons for not reviewing her own bank statements * * *

Shea v. Commissioner, 780 F.2d at 566-567 (citation omitted). In conclusion, petitioner has failed to establish that she had no reason to know that there was an understatement on the 1982 joint Federal income tax return. Accordingly, she is not entitled to relief under section 6015(b).

IV. Section 6015(f)

Section 6015(f) provides for relief from joint liability if after taking into account all the facts and circumstances, it is inequitable to hold the individual liable. Under the authority granted by section 6015(f), the Commissioner has issued Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. 296, 298, which sets forth the factors to be applied when making a determination in a case involving an understatement of tax for requests made when petitioner's was submitted to respondent. We will review those factors in the light of the facts and circumstances of this case.

(i) <u>Marital Status</u>. Because petitioner remained married to Mr. Greer, this factor is neutral.

(ii) <u>Economic Hardship</u>. Petitioner has failed to establish that respondent's determination regarding a lack of economic hardship was incorrect. Therefore, this factor is negative.

(iii) <u>Knowledge or Reason To Know</u>. For the reasons discussed previously, this factor is negative to petitioner.

(iv) <u>Legal Obligation of Nonrequesting Spouse</u>. There is no such obligation in this case; this factor is neutral.

(v) <u>Significant Benefit</u>. As discussed previously, in this record an unusual financial benefit is not clearly established; this factor is favorable to petitioner.

(vi) <u>Compliance with Tax Laws</u>. This factor favors granting relief.

(vii) <u>Other Factors</u>. Rev. Proc. 2003-61, <u>supra</u>, provides factors which if present will weigh in favor of granting relief, but the absence of which will not support the denial of relief. These factors are spousal abuse or poor mental or physical health at the time the return was filed. Neither of these factors is applicable in this case.

In summary, there are two negative and two positive factors; given its significance, factor (iii) pushes the scale against granting relief under section 6015(f).

V.   Prior Cases

This case is distinguishable from other cases where spouses of individuals who invested in tax shelters were found eligible for relief.  See, e.g., Korchak v. Commissioner, T.C. Memo. 2006-185 (requesting spouse established no reason to know where requesting spouse did not know nonrequesting spouse was making investment; requesting spouse had no practical business experience; and tax return reported multiple investment losses and credits so that disallowed investment did not stand out); Campbell v. Commissioner, T.C. Memo. 2006-24 (requesting spouse established no reason to know where requesting spouse did not know nonrequesting spouse was making investment; there was concealment by nonrequesting spouse; and reported items were not noticeable given complexity of return).  Petitioner knew of the Madison investment.  There was no deception or concealment by Mr. Greer. Petitioner was put on notice by the claimed tax benefits on Form 1045 for years prior to 1982 that something out of the ordinary was generating large tax benefits.  She also knew the significant distributions they were receiving as a result of the sale of the G&L assets.  The Madison investment was reflected in the joint bank account to which petitioner had access.  These facts distinguish the present case from Korchak and Campbell.

Conclusion

Petitioner is not entitled to relief from joint liability under section 6015 (b) or (f). Accordingly,

Decision will be entered

for respondent.